844 So.2d 1042 (2003)
STATE of Louisiana
v.
Ronnie L. FRANCOIS and Ricky M. Kemp.
No. 2002-KA-2056.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 2003.
*1044 Harry Connick, District Attorney of Orleans Parish, Claire A. White, Assistant District Attorney of Orleans Parish, New Orleans, LA, for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, for Defendant/Appellant Ronnie L. Francois.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant Ricky M. Kemp.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge PATRICIA RIVET MURRAY, Judge DAVID S. GORBATY).
PATRICIA RIVET MURRAY, Judge.
On August 28, 2001, Ronnie Francois and Ricky Kemp were charged by bill of information with possession of heroin with intent to distribute, a violation of La. R.S. 40:966(A). Both pleaded not guilty. On October 16, 2001, the trial court, following a hearing, denied the defense motion to suppress the evidence and found probable cause to arrest them both. On January 8, 2002, Mr. Francois and Mr. Kemp were jointly tried before a twelve-person jury and were both convicted as charged. On February 4, 2002, the trial court sentenced them both to serve five years at hard labor. The state then filed multiple bills. In April 2002, following separate hearings on their multiple bills, the trial court vacated their original sentences and re-sentenced Mr. Francois to twenty years at hard labor as a fourth felony offender and Mr. Kemp to twenty years at hard labor as a third felony offender.[1] Both Mr. Francois and Mr. Kemp appealed.

FACTS
On August 17, 2001, Detectives Jules Martin and Jamar Little, both of the New Orleans Police Department Third District Narcotics Unit, went to 3827 Gibson Street, Apartment A, in New Orleans to serve an arrest warrant on Linda Francois for unrelated charges (writing bad checks). When they arrived, Henrietta Francois answered the door and identified herself as Linda Francois' mother. Henrietta Francois told the officers that she was unsure if her daughter was at home, but allowed them into the apartment to look for her. As the officers entered the hallway of the apartment, they saw that the door to the first bedroom, which Henrietta Francois identified as Mr. Francois' bedroom, was slightly ajar. Emanating from that room, were the sounds of people talking and a television blasting. Out of concern for their safety, the officers announced their presence and entered the room.
Upon entering the room, the officers observed Mr. Francois and Mr. Kemp working as a team packaging heroin into individually wrapped foil packets. Mr. Francois was sitting between the twin beds, apparently on a chair; he was scooping white powder from a plate and placing it on the foils that were laid out on a brown photo album that was situated on Mr. Kemp's lap. Mr. Kemp was sitting on the right corner of one of the twin beds; he was folding the foils after Mr. Francois placed the white substance on them. The officers arrested Mr. Francois and Mr. Kemp. At the time of the arrests, there *1045 were fourteen foils with white powder substance (which subsequently tested positive for heroin), six foils with nothing in them, and a little mound of white powdery substance on a plate with a plastic spoon. The officers also found $178 in cash in the room and a medical bill addressed to Mr. Francois at that address.
After the officers informed her of what they had found, Ms. Henrietta Francois, who was the apartment lessee, signed a consent to search form. The officers searched the remainder of the apartment, yet found no additional contraband. Likewise, Detective Martin performed the search incident to the arrest of both Mr. Francois and Mr. Kemp, yet found neither weapons nor cash on either of them. The detectives acknowledged that they did not check Mr. Francois' or Mr. Kemp's arms for track marks, which would have indicated drug use. The officers also acknowledged that they did not find a scale in the apartment.
Summarizing, the following evidence was seized from the apartment: a plate with a mound of white powder on it, fourteen foil packages containing white powder, six empty foils, two pairs of scissors, a package of aluminum foil, pieces of foil cut into squares, a small spoon, a small plastic fork, a finger from a rubber glove which contained white residue, plastic bags containing residue, playing cards with residue on them, razor blades, a box of sandwich bags, $178 in cash, and a medical bill addressed to Mr. Francois at the residence. In total, approximately five to six grams of heroin were seized.
At trial, Detective Martin testified that because of the "vast amount of evidence" they found on the scene, they called the Crime Lab to photograph the evidence and the manner in which it was situated. Those photographs were introduced at trial. Also at trial, the parties stipulated that if Criminalist John Palm were called to testify, he would be qualified as an expert in the field of testing and identification of controlled dangerous substances, and he would testify that the contents of some of the state's exhibits (the seized evidence) tested positive for heroin. The criminalist's report was also entered into the record and reflects the weight of only the following four seized items: (1) fourteen pieces of foil each containing a powder 1.0 gram; (2) one plastic bag containing a powder1.6 gram; (3) one small plastic bag containing a powder.6 gram; and (4) one small plastic bag containing one small latex bag (finger from a latex glove) containing a second small latex bag containing a powder2.5 grams.

INSUFFICIENCY OF EVIDENCE
On appeal, both Mr. Francois and Mr. Kemp raise as their sole assignment of error the insufficiency of the evidence to support their convictions for possession of heroin with intent to distribute.[2] The standard for reviewing a claim of insufficient evidence is whether, viewing the evidence in the light most favorable to the *1046 prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, the reviewing court must determine whether the evidence viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all the elements of the crime were proved beyond a reasonable doubt. If rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). This standard thus "preserves the role of the jury as the factfinder the case but it does not allow jurors `to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.'" State v. Pierre, 93-0893, p. 5 (La.2/3/94), 631 So.2d 427, 429.
Under Jackson, the totality of the evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. See State v. Jacobs, 504 So.2d 817, 820 (La.1987). When circumstantial evidence forms the basis for the conviction, the totality of the evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, "[h]ypotheses of innocence are merely methods for the trier of fact to determine the existence of a reasonable doubt arising from the evidence or lack of evidence." State v. Shapiro, 431 So.2d 372, 389 (La.1982)(are oreh'g) (Lemmon, J., concurring). The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012.
This circumstantial evidence rule is not a separate test from Jackson; rather, La. R.S. 15:438 merely "provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found defendant guilty beyond a reasonable doubt." State v. Wright, 445 So.2d 1198, 1201 (La.1984); see also State v. Addison, 94-2431 (La. App. 4 Cir. 11/30/95), 665 So.2d 1224. Although the circumstantial evidence rule is not a more stringent standard than the general reasonable juror's reasonable doubt formula, "it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, 436 So.2d 464, 470 (La.1983).
To support a conviction for possession with intent to distribute a controlled dangerous substance (here, heroin), the state must prove both possession and specific intent to distribute. See State v. Smith, 94-1502 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078. In this case, possession is not at issue. Both Mr. Francois and Mr. Kemp clearly possessed the heroin that they were found packaging. The narrow issue is whether the state established the specific intent to distribute it.
Because intent is a state of mind, "[i]t is very unusual to have direct evidence of intent." State v. Perkins, 97-1119, p. 16 (La.App. 3 Cir. 6/17/98), 716 So.2d 120, 129. Instead, intent almost always must be proved by circumstantial evidence. Circumstantial evidence is "collateral *1047 facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." State v. Williams, 99-223, p. 8 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 608. It follows then that "[s]pecific intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute." State v. Crosby, 98-0372, p. 6 (La.App. 4 Cir. 11/17/99), 748 So.2d 502, 506; State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir. 1989).
To aid in determining whether circumstantial evidence is sufficient to establish specific intent to distribute, the Louisiana Supreme Court, in the seminal case State v. House, 325 So.2d 222, 225 (La.1975), enumerated the following five factors:
(1) whether the defendant ever distributed or attempted to distribute the drug;
(2) whether the drug was in a form usually associated with possession for distribution to others;
(3) whether the amount of drug created an inference of an intent to distribute;
(4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and
(5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Applying those five-factors to the facts of the instant case, we find the state's evidence addresses only the second and fifth factors, which we discuss together last.
As to the first factor, the state introduced no evidence that Mr. Francois or Mr. Kemp had ever distributed or attempted to distribute drugs in the past. Indeed, Detective Little acknowledged that he did not consider Mr. Francois or Mr. Kemp as "drug dealers," but only saw them performing "the operation of drugs being prepared for sales." Cf.State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881 (officer's testimony that he saw the defendant apparently engaged in a drug deal satisfied this factor). Nor was there any evidence of prior drugs deals out of the apartment where Mr. Francois and Mr. Kemp were found. See State v. Kelly, 01-321, p. 7 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 984, writ denied, XXXX-XXXX (La.11/1/02), 828 So.2d 565 (citing prior drug sales out of apartment as factor supporting intent to distribute). Moreover, the detectives found them in Mr. Francois' bedroom, not on a street corner or in a known drug trafficking area. See State v. Perry, 97-1175, pp. 8-9 (La.App. 4 Cir. 7/22/98), 720 So.2d 345, 349 (contrasting a defendant found in his own home with drugs with one found on a street corner).
As to the third factor, mere possession of a controlled dangerous substance is not evidence of an intent to distribute unless the quantity possessed is so large that no other inference is reasonable. State v. Tong, 609 So.2d 822, 824 (La.1992)(citing State v. Hearold, 603 So.2d 731, 735 (La.1992)). Such is not the case here. The sole evidence in the record regarding the quantity of heroin found was the criminalist's report, which indicates that only about five to six grams of heroin were found. Moreover, there were two defendants in possession of that amount of heroin; hence, this clearly was not a sufficient quantity of heroin to give rise to an inference of distribution. Cf. State v. Johnson, XXXX-XXXX (La.App. 4 Cir. 2/14/01), 780 So.2d 1140, writ denied, XXXX-XXXX (La.2/1/02), 807 So.2d 854 (finding a total of four pounds of marijuana too large an amount for personal use); State v. *1048 Fernandez, 489 So.2d 345, 347 (La.App. 4 Cir.1986)(finding twenty-one small bags and several larger bags of cocaine supported inference of distribution).
As to the fourth factor, neither of the detectives who testified for the state was qualified as an expert; rather, they both testified based on their experience as narcotics officers. Moreover, their testimony was that the packaging of the heroin was consistent with distribution; their testimony was not that the amount of heroin was inconsistent with personal use. Nor did the detectives offer any testimony regarding the retail value of the heroin in the form it was seized.
As noted, the state's evidence falls within the second and fifth factors. The state's principal evidence of distribution was the assembly line fashion in which Mr. Francois and Mr. Kemp were packaging the heroin into individual foils when the detectives stumbled onto them. Both detectives testified that the reason they charged Mr. Francois and Mr. Kemp with possession with intent to distribute was because the manner in which they were packaging the heroin was consistent with distribution. Detective Martin testified that it was "because of the amount of small packages and the way it was packaged, through my experience;" Detective Little testified that he too, based on his experience, believed he "saw an operation of drugs being prepared for the distribution of heroin." Detective Little further testified that the box of sandwich bags that was found in the apartment was the kind "commonly used in packaging." Based on that testimony, the jury reasonably could have inferred that the foils of heroin that were being prepared indicated an intent to distribute, satisfying the second factorthe heroin was in a form associated with distribution.
Although the second factor is significant, it is "counterbalanced by the fact that this form is also used for personal consumption." State v. Green, 524 So.2d 927, 931 (La.App. 2 Cir.1988)(noting defendant may have purchased the drug in that form for his own use as opposed to possessing it in that form with the intent to distribute it to others); State v. Green, 508 So.2d 602, 606 (La.App. 2 Cir.1987). Here, it is quite plausible that Mr. Francois and Mr. Kemp were preparing the heroin for their own personal consumption. Indeed, Detective Little on cross-examination acknowledged that the heroin was being prepared for "individual doses." The detectives' testimony regarding the packaging of the heroin thus did not exclude the reasonable inference that they were packaging it for personal consumption.
Perkins, supra, involved somewhat similar facts and is illustrative of why the second factor generally is not dispositive. There, the officers found Mr. Perkins (the defendant) sitting in the front seat of his parked vehicle with his rear seat passengers in the process of preparing "blunts," i.e., cutting the tips off cigars, emptying the tobacco from the cigar, and replacing it with marijuana. When the officers approached the vehicle, the defendant fled. In the vehicle, the officers found a handgun, some blunts, and a bag containing fifteen marijuana cigarettes as well as some loose marijuana. Reversing the defendant's conviction, the court reasoned that the evidence was "woefully insufficient" to prove an intent to distribute. In so doing, the court noted that the sole House factor present was the second one: the marijuana was in a form associated with distribution. The court further noted that "there was no testimony that such packaging was inconsistent with personal use only, particularly considering the presence of three individuals in the car who could have shared the marijuana among themselves." Perkins, 97-1119, pp. 16-17, *1049 716 So.2d at 129. The court still further noted that the officer testified only that the number of blunts (one finished and one in the process of being made) and hand rolled marijuana cigarettes (fifteen) suggested an intent to distribute, yet the officer "was not asked, nor did he give an opinion on, whether the number of cigarettes was inconsistent with personal use." Perkins, 97-1119, p. 17, 716 So.2d at 129.
Likewise, as the defense argues in this case, no expert testimony was offered that drug dealers are the only ones who divide their heroin into individual doses. Again, it is possible that Mr. Francois and Mr. Kemp may have been packaging the heroin for their own personal use as opposed to for distribution to others. The presence of the second factor is thus not dispositive.
As to the fifth and final factor of evidence of paraphernalia, such as baggies or scales, that would evidence the intent to distribute, the only evidence regarding this factor was the detectives' testimony regarding the packaging of the heroin, i.e., the foils and baggies. As discussed above, the mere presence of packaging consistent with distribution is not dispositive because such preparation could be viewed as consistent with either distribution or personal use. Other factors from which an intent to distribute can be inferred include a large sum of cash and weapons. Neither a weapon nor a large amount of case was in the apartment or on Mr. Francois or Mr. Kemp when they were arrested. Nor was a scale or any substance used to dilute heroin found in the apartment.
As in Perkins, we find that the state failed to satisfy more than one or two of the five House factors. Mr. Francois and Mr. Kemp were found with about six grams of cocaine some of which had been packaged into foils. There was no expert or other testimony that this amount of heroin was inconsistent with personal use by those two individuals. Under these circumstances, we find that the jury reasonably could have inferred that they were packaging the heroin for their own personal use. The state failed to prove that they intended to distribute the heroin, which is an essential element of the crime charged. Thus, we find that the evidence was insufficient to convict Mr. Francois and Mr. Kemp of that crime.
Our finding is buttressed by our recent holding in State v. Mamon, 98-1943 (La. App. 4 Cir. 9/8/99), 743 So.2d 766, in which we reversed a conviction for intent to distribute based on insufficiency of the evidence. In so doing, we stressed that the state's circumstantial evidence of intent was minimal, stating:
[T]he officers admitted that they never saw defendant distribute or attempt to distribute the marijuana. Defendant carried only thirteen dollars, limiting his ability to provide change for a sale; and he carried no weapons. Officer Quetant did not provide any expert testimony concerning the packaging of marijuana for retail sales, nor did he address the question of whether the amount of marijuana defendant possessed was inconsistent with personal use. Officer Walker testified that they arrested defendant for possession with intent to distribute because of the quantity of marijuana and the packages of individual baggies. However, the State did not tender Officer Walker as an expert, and the trial court allowed the testimony only to show the basis for defendant's arrest. Thus, the State did not produce any expert testimony on quantity and/or packaging of marijuana for retail sales. Similarly, it produced no evidence on the consistency of the amount possessed with strictly personal use.
Mamon, 98-1943, pp. 6-7, 743 So.2d at 771.
Likewise, the circumstantial evidence presented by the state in this case is extremely *1050 limited and does not support the charged offense. However, the evidence does support a conviction for the lesser and included offense of possession of heroin. This court is authorized to enter a judgment of guilty of the lesser and included offense. La.C.Cr.P. art. 821(E)(proving that discharge is neither necessary nor proper when the evidence supports conviction of a lesser included offense). We thus find Mr. Francois and Mr. Kemp guilty of possession of heroin.

DECREE
For the foregoing reasons, the convictions of Mr. Francois and Mr. Kemp are amended to judgments of conviction for the lesser included offenses of possession of heroin, La. R.S. 40:966(D). Mr. Francois' and Mr. Kemp's adjudications as multiple offenders and corresponding sentences are also vacated. This matter is remanded to the trial court for resentencing on the modified judgments of conviction.
CONVICTION REVERSED AND MODIFIED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.
NOTES
[1] The transcript of the first sentencing of each defendant is dated January 4, 2002. This date is obviously wrong because the trial was January 8, 2002. The minute entry lists the sentencing as February 4, 2002.
[2] Although Mr. Francois also filed a pro se supplemental brief in which he assigned five errors pertaining to his multiple bill hearing, we do not reach those assignments given our reversal of his conviction on the merits and our remand for resentencing. Likewise, although a review of the record for errors patent reveals one relating to sentencing, our decision on the merits vacating the sentences of both Mr. Francois and Mr. Kemp renders that error moot. We note the error was the trial court's failure to provide that the sentences should have been sentenced without benefit of parole, probation or suspension of sentence pursuant to La. R.S. 40:966(A). However, the sentence would have been corrected by operation of law. La. R.S. 15:301.1: State v. Williams, XXXX-XXXX (La.11/28/01), 800 So.2d 790.