hPER CURIAM.
Although the state and defense hotly disputed the inferences arising from the evidence, the circumstances underlying defendant-respondents’ convictions and sentences for possession of heroin with intent to distribute in violation of La.R.S. 40:966(A)(1) were largely uncontested at trial. Pursuing an unrelated criminal investigation in August 2001, New Orleans Police Detectives Martin and Little arrived at an address on Gibson Street to execute an arrest warrant for Linda Francois. Henrietta Francois greeted the officers at the door and allowed them to look inside for her daughter. As the officers entered the hallway of the apartment, they saw that the door to the first bedroom was slightly ajar and they heard people talking and a television playing loudly. Because they were concerned for their safety, the officers announced their presence and pushed open the bedroom door.
As they entered the room, the officers observed respondent Francois sitting on a chair between two twin beds, scooping *127 white powder from a plate and placing it on square pieces of foil that were laid out on a brown photo album |2resting on respondent Kemp’s lap. Kemp, sitting on the right corner of one of the twin beds, had used a pair of scissors to cut the foil into “perfect” squares and then folded the foils after Francois placed the white substance on them. The officers immediately arrested the two men and found 14 foils with heroin, six empty foils, a small mound of heroin on a plate with a plastic spoon, two pairs of scissors, a package of aluminum foil, pieces of foil cut into squares, a small plastic fork, a finger from a rubber glove which contained white residue, plastic bags containing residue, playing cards with residue on them, razor blades, and a box of sandwich bags which Detective Martin testified are commonly used in the streets to bundle together individual papers of heroin. In total, approximately five to six grams of heroin, or one quarter ounce, was seized. The officers also found $178 in cash, in denominations of twenties, tens, fives and ones, in the room and a medical bill addressed to Francois at that address. A search of the remainder of the apartment uncovered no additional contraband, and a search of respondents did not yield any weapons or cash from either of them. The officers did not inspect respondents’ arms for track marks but they found no syringes or any other evidence which might have indicated that Francois’s apartment functioned as a “shooting gallery.” Although not qualified by the court as experts in drug trafficking, both officers testified on the basis of their experience in the Third District Narcotics Unit that the “assembly line” process they had observed reflected “the operation of drugs being prepared for sales.”
On appeal, respondents argued that the evidence supported verdicts only for simple possession of heroin. The court of appeal agreed, although it readily conceded that [biased on [the officers ] testimony, the jury reasonably could have inferred that the foils of heroin that were being prepared indicated an intent to ^distribute [because] the heroin was in a form associated with distribution.” State v. Francois, 02-2056, p. 9 (La.App. 4th Cir.4/9/03), 844 So.2d 1042, 1048. However, the court found that factor “counterbalanced” by the fact that the heroin was also in the form associated with personal consumption, ie., measured out in small foil packets, and that it was therefore “quite plausible that Mr. Francois and Mr. Kemp were preparing the heroin for their own personal consumption.” Id. The court of appeal noted in this regard that neither officer testified that the packaging of heroin was inconsistent with personal use or that “drug dealers are the only ones who divide their heroin into individual doses.” Id., 02-2056 at 10, 844 So.2d at 1049. The court further observed that the officers seized no weapons, cutting agents, scales, or large amounts of cash in connection with the arrests of respondents. Considering the totality of the circumstances, and applying the criteria set forth by this Court for determining whether circumstantial evidence is sufficient to prove an intent to distribute a controlled dangerous substance, see State v. Hearold, 603 So.2d 731, 735 (La.1992), the Fourth Circuit concluded that “the jury reasonably could have inferred that [respondents] were packaging the heroin for their own personal use.” Id., 02-2056 at 11, 844 So.2d at 1049. The court of appeal accordingly reduced respondents’ convictions to simple possession of heroin and remanded the case to the district court for resentencing.
However, the court of appeal erred in amending the jury’s verdicts because jurors considered and rejected the hypothesis that respondents had been preparing the bulk heroin for personal use as *128 a basis for acquitting respondents of the charged offense and a reviewing court may impinge on ’ the “fact finder’s discretion only to the extent necessary to guarantee the fundamental due process of 'law.” State v. Mussall, 523 So.2d 1305, 1310 (La.1988). In cases involving circumstantial evidence, when the jury reasonably rejects the hypothesis of innocence advanced by the defense, “that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.” State v. Captville, 448 So.2d 676, 680 (La.1984). In the present case, respondent Francois’s attorney put the issue of intent squarely before the jury when he urged jurors during closing argument to consider that:
You can’t take that stuff in big doses; it will kill you. So what do you do with it? Well, you break it down into useable sizes. To be used at a later date so you don’t wind up killing yourself. You know, addicts sometimes, they’ll just take this stuff forever. So what you do is you cut it down to size, you put it in your little tin foil, you maintain it; when you’re ready to use it, you open a little tin foil and you put something in there whether its methyl alcohol or whatever, dissolves it and you put your needle in it and you put it in your arms. That’s how it’s done and that’s what they did. Now you think that’s not true? Well, let them show you evidence that that’s not true.
We cannot say on the present record that jurors unreasonably or irrationally rejected this defense hypothesis of innocence. Even accepting defense counsel’s argument that addicts would not consume the entire amount at one time, the care with which respondents converted the heroin from bulk form to individual doses supported a reasonable inference that they used a common method of packaging drugs for distribution because they meant to sell the squares on the street as opposed to dividing up the heroin for their own personal use at a later time. Because that inference flowed logically from the overall evidence presented by the state, including the opinions offered by the arresting officers, see State v. Short, 96-1069, p. 4 (La.App. 4th Cir.5/7/97), 694 So.2d 549, 552 (officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable), jurors did not deprive | ¡^respondents of their due process right to a fact 'finder’s rational decision making, Mussall, 523 So.2d at 1310, by rejecting the more remote hypothesis that the packaging could have been for personal use as a basis for finding a reasonable doubt as to guilt that otherwise did not exist.
The decision of the court of appeal is therefore reversed and this case is remanded for consideration of the pro se assignments of error pretermitted on original appeal.
DECISION OF THE COURT OF APPEAL REVERSED; CASE REMANDED.
CALOGERO, C.J., dissents.
The evidence of the crime for which defendant was convicted was insufficient.
KNOLL and JOHNSON, JJ„ dissent and assign reasons.