JOAN BERNARD ARMSTRONG, Chief Judge.
_JjOn October 25, 2004, the State filed a bill of information charging the defendant-appellant Matthias Love with one count of simple possession of oxycodone, a violation of La. R.S. 40:967. The defendant was arraigned and entered a not guilty plea on *162 November 11, 2004. The trial court denied the defendant’s motion to suppress evidence on November 10, 2004. Trial before a six-person jury occurred on May 16, 2005. The jury returned a responsive verdict of guilty of attempted possession of oxycodone. On May 19, 2005, the court sentenced the defendant to fifteen months at hard labor. The defendant moved for an appeal, which was granted. On June 2, 2005, the defendant was adjudicated a second offender. The court vacated the prior sentence and resentenced the defendant to fifteen months at hard labor under La. R.S. 15:529.1. This appeal follows.[1]
The record reflects that on October 5, 2005, Officers Brian Sullivan and Jennifer Payne of the New Orleans Police Department were on routine patrol in a marked unit near the Gentilly area of New Orleans. When the officers were | ^stopped at the light at the intersection of Franklin and Robert E. Lee, they noticed the defendant crossing the street. When he reached the other side, he bent over and placed his hands on his knees as if he was unwell. The officers made a U-turn in order to stop and determine the defendant’s situation. When the defendant noticed the marked police unit turning around, he “popped up” and began walking away. The officers stopped their vehicle, exited, and called the defendant over. They asked him if he was all right, and the defendant responded that he was merely trying to get home. The officers noticed that the defendant was sweating profusely, had blood shot eyes, and was slurring his speech. Believing he was intoxicated, the officers placed him under arrest for “being intoxicated by incapacitation” and advised him of his rights. The defendant told them, ‘Y’ll think y’ll caught me smoking.” The officers searched the defendant and found an orange pill bottle in his pocket. It was labeled as oxycodone and contained two pills that were consistent with oxyco-done. The name Amber Love was listed on the label as the person to whom the drug had been prescribed. The officers arrested the defendant for possession of the pills.
At trial, Officer Sullivan testified that he and his partner attempted to find out who Amber Love was. They questioned the defendant, who stated she was his sister. They asked him for a number where they could reach her, but he indicated he was not sure what it was. He also told them that she was at her boyfriend’s house, but he did not know the exact street. Officer Sullivan further stated that the defendant said he was taking the pills to his sister.
Officer Payne testified at the trial that the defendant first said he was taking the pills to his sister, but later changed his story and said “he was going to pick | sthem up” and that his story changed. He was unable to give the officers any specific information about where his sister lived.
Both officers testified that they did not find any marijuana in the defendant’s possession or near him. Officer Payne stated that she smelled an odor of marijuana on the defendant.
The parties stipulated that criminalist Harry O’Neal would testify that he tested the pills marked as State’s exhibit one and that they were positive for oxycodone.
The defense called Amber Love as a witness. She testified that she is the defendant’s sister, that the pills found in the defendant’s possession were hers, and that *163 the defendant was bringing them to her at her request. She explained that the prescription had been given to her in May when she had a baby. In September she had moved from her mother’s home at 2500 Madrid Street[2] to a residence on Robert Street. She left the prescription, of which only a few pills remained, at her mother’s house, as well as some of her other belongings. The defendant also lived at her mother’s house at 2500 Madrid Street. On the morning of the defendant’s arrest, Ms. Love testified that she called her mother and asked if someone could bring the medication to her as she was in pain. Ms. Love’s mother said she would send them with the defendant, who had been to Ms. Love’s new residence previously.
In further testimony, Ms. Love stated that the intersection of Robert E. Lee and Franklin was approximately two blocks from her mother’s house. She also Instated that the defendant would have gone to the intersection to get on the bus in order to go uptown to Ms. Love’s Robert Street residence.
On cross-examination, Ms. Love stated that she did not personally speak to her brother on the day of his arrest and could not say what condition he was in at the time. She was asked how much bus fare the defendant would have needed to go to her residence uptown, and she indicated it would probably be three dollars. She also testified that neither she nor her relatives living on Madrid Street had a vehicle.
A review of the record for errors patent reveals that there are none.
No other defense witnesses were presented.
In his sole assignment of error, the defendant argues that the circumstantial evidence presented by the State failed to exclude the reasonable hypothesis of innocence presented by the defendant, specifically that he was in possession of the prescription drugs solely for the purpose of taking them to his sister and not with any illegal intent.
In State v. Clark, pp. 3-4, 2005-0136 (La.App. 4 Cir. 5/18/05), 904 So.2d 793, 794-96, this Court discussed the issue of sufficiency of evidence in a situation where the defendant claimed the drug in his possession had been issued pursuant to a valid prescription:
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588J¿So.2d 757 (LaApp. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be im *164 pinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
La. R.S. 40:967(C) states it is unlawful:
[F]or any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 [Footnote omitted] while acting in the course of his professional practice, or except as otherwise authorized by this Part.
Oxycodone is a Schedule II controlled dangerous substance. La. R.S. 40:964, Schedule II(A)(l)(o). La. R.S. 40:967(C) | ^contemplates that possession of Schedule II drugs is illegal unless the possessor obtained them directly from a practitioner or that the possessor obtained them pursuant to a valid prescription. That is, it would subvert the obvious purpose of the statute to interpret it to mean that one could legally possess Schedule II drugs as long as someone in the chain of possession had obtained them pursuant to a valid prescription.
In Clark, the defendant was in possession of a prescription bottle from which the label had been removed. When arrested, he averred that an unidentified person was going to throw the medication away and that this person gave it to him when he asked for it. Thus, in contrast to the instant case, the defendant in Clark did not present any evidence that there had ever been a valid prescription issued for the drugs found in his possession.
Furthermore, the defendant in Clark was unable to show that he was among the class of persons who could legally possess the medication, assuming there had once been a valid prescription. La. R.S. 40:967(C) exempts from criminal liability persons who possess a Schedule II drug pursuant to a valid prescription as provided in La. R.S. 40:978, which states in pertinent part that:
A. Except when dispensed or administered directly by a medical practitioner or administered by a person authorized to administer by such practitioner, other than a pharmacist, to an ultimate user, no controlled dangerous substance included in Schedule II, which is a pre *165 scription drug as determined under the Louisiana Revised Statutes, of 1950, may be dispensed or administered without the written prescription of a practitioner, except that in emergency situations, as prescribed by the department by regulation, such drug may be dispensed or administered upon oral prescription reduced promptly to writing and filed by the pharmacist. Prescriptions shall be retained in conformity with the requirements of La. R.S. 40:976. No prescription for a Schedule II substance may be refilled.
[Emphasis added.]
The definition of an ultimate user is contained in La. R.S. 40:961(40):
|7“Ultimate user” means a person who lawfully possesses a controlled dangerous substance for his own use or for the use of a member of his household or for administration to an animal owned by him or by a member of his household.
[Emphasis added]
The defense in the instant case was that the defendant was an “ultimate user” because he was in possession of the two oxycodone pills solely to deliver them to his sister to whom they had been lawfully prescribed and who was or recently had been a member of his household. In other words, the defendant’s defense was essentially that he was helping his sister move her belongings, specifically her lawfully prescribed medication, to her new home. Assuming that Amber Love was telling the truth when she testified that the defendant was in possession of the drugs solely to deliver them to her at her request because she had failed to take them with her when she moved a month before, it appears that the defendant did not commit the offense with which he was charged.
However, the jury apparently rejected the testimony of Ms. Love and thus the defendant’s reasonable hypothesis of innocence. A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432. The evidence which supports the jury’s credibility decision here is the testimony of Officer Jennifer Payne that the defendant changed his story regarding whether he was on his way to deliver his sister’s medication to her or whether he was “going to pick them up”. Notably, Officer Sullivan did not testify specifically that the defendant’s story changed; instead he testified that the defendant said he was taking the pills to his sister at her | Rboyfriend’s house, although he stated that the defendant also said he was trying to get home.
The defendant’s statement to the police that his sister was uptown was corroborated by Ms. Love’s testimony that she had moved in with her friend on Robert Street. The defendant’s lack of criminal intent to possess the pills was arguably bolstered by his statement to the police officers that they believed that they had caught him smoking marijuana. This admission by the defendant explained his apparent intoxication, as an admission that he had been smoking marijuana, and was corroborated by Officer Payne’s testimony that an odor of marijuana emanated from the defendant. The defendant’s admission that he had been smoking marijuana also provided an alternate explanation for his attempt to avoid the police. Further corroboration of the defendant’s explanation for his possession of the pills is found in the citation for public intoxication, State’s exhibit S-2. that shows that the defendant was arrested at 9:30 a.m. This corroborates Ms. Love’s testimony that she called her mother in the morning and asked for someone to deliver the medication to her.
*166 The State in its brief argues that the defendant’s story was cast into doubt by the fact that “he did not know his sister’s phone, number, her address, or even where she lived.” However, the testimony of Officer Sullivan was more equivocal than that. He actually testified that the defendant said “he wasn’t sure what the [phone] number was.” Also the defendant said he was not sure of the exact street where his sister was staying, not that he did not know where she lived Furthermore, although the defendant was only a few blocks from his house, which was the same address as was on the prescription bottle, the officers apparently made no attempt to go to the residence on Madrid Street.
InThe State further argues that the defendant was allegedly going to take the bus, but had no money with him. The prosecutor attacked Ms. Love’s credibility by questioning her at length about what bus fare the defendant would have needed to go to her residence, implying that the defendant was without these funds. However, there was absolutely no testimony or evidence to show that the defendant did not have money with him. The prosecutor also attacked Ms. Love’s credibility by suggesting that she was a bad mother by taking pain medication that had possible side effects of dizziness and sedation.[3] Nevertheless, Ms. Love’s testimony that she was given the prescription originally for pain related to childbirth, that the prescription was only for twenty pills, that she did not take them all, and that she needed them again due to pain, was reasonable. The prosecutor’s attack on Ms. Love’s credibility, while successful, was based in large part on matters that were not supported by the evidence or were irrelevant.
Finally, the State in its brief notes that the jury’s verdict was unanimous. The State fails to note that the jury did not return a verdict of guilty as charged of simple possession. Rather, the verdict was guilty of attempted possession. Clearly, the verdict was a compromise as the defendant was in physical possession of the drugs.
Nevertheless, as was stated by the Louisiana Supreme Court in State v. Francois, p. 4, 2003-1313 (La.4/14/04), 874 So.2d 125, 128:
In cases involving circumstantial evidence, when the jury reasonably rejects the hypothesis of innocence advanced by the defense, “that hypothesis falls, and the defendant is guilty unless there is another | inhypothesis which raises a reasonable doubt.” State v. Captville, 448 So.2d 676, 680 (La.1984).
The jury in this matter was presented with a reasonable hypothesis of innocence and rejected it. This Court’s function is not to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence, but instead to “assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt.” State v. Mussall, 528 So.2d 1305, 1311 (La.1988). (citing 2 C. Wright, Federal Practice and Procedure, Criminal 2d, § 467, at 465-166 (1982)). Furthermore, this Court “cannot substitute its idea of what the verdict should be for that of the jury.” Id. This Court is also “constitutionally precluded from acting as a ‘thirteenth juror’ in assessing what weight to give *167 evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact.” State v. Mitchell, p. 8, 1999-3342 (La.10/17/00), 772 So.2d 78, citing State v. Azema, 633 So.2d 723, 727 (La.App. 1 Cir.1993). Applying this standard, this Court must conclude that the jury’s verdict was a fundamental denial of due process before it can reverse the jury’s verdict. State v. Mitchell.
This case presents a close question of whether the State’s evidence negated the defense that the defendant was an ultimate user who was not criminally liable under La. R.S. 40:967 for possession of the oxy-codone which had been validly prescribed to his sister, and the assignment of error merits serious consideration. However, because of the standard of review to be applied, it appears that the jury’s verdict should not be reversed.
InFor. the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The lodging of the appeal was delayed because of disruptions caused by Hurricane Katrina. Also, because of problems caused by the hurricane, the court reporter was unable to prepare the transcript of the multiple offender proceeding. However, the defendant makes no complaint about the absence of the transcript because he has served his sentence.

. This is also the address listed for her on the prescription bottle label.

. For example, the prosecutor asked Ms. Love if she was breastfeeding her baby, apparently with the intent to question her about taking medication which is secreted in breast milk. However, Ms. Love replied that she was not breastfeeding. Also, when the prosecutor asked her about caring for her baby while taking the medication, she replied that the infant’s father cared for the child.