STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-896

STATE OF LOUISIANA

VERSUS

JOHNNY L. EUBANKS

**********

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 90,234
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED.

J. Reed Walters
District Attorney – 28th Judicial District Court
P. O. Box 1940
Jena, LA 71342
(318) 992-8282
COUNSEL FOR APPELLEE:
    State of Louisiana

**Peggy J. Sullivan**
**La Appellate Project**
**P. O. Box 2806**
**Monroe, LA 71207**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Johnny L. Eubanks**

**Steven P. Kendrick**
**Attorney at Law**
**P. O. Box 1889**
**Jena, LA 71342**
**(318) 992-4107**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**SAUNDERS, Judge.**

The Defendant, Johnny L. Eubanks, was charged by bill of information filed on November 16, 2009, with possession of marijuana with intent to distribute, a violation of La.R.S. 40:966. A plea of not guilty was entered on December 1, 2009. Trial by jury commenced on June 21, 2010, and the jury returned a verdict of guilty the following day. On August 31, 2010, the Defendant was sentenced to serve twenty years at hard labor. A motion to reconsider sentence was filed on October 1, 2010, and was denied as untimely filed on October 6, 2010.

A motion for out-of-time appeal was filed on March 8, 2012, and was subsequently denied. An application for post-conviction relief was filed on April 20, 2012. On July 3, 2012, the trial court granted the Defendant fifteen days to perfect an appeal. The Defendant filed a motion for appeal on July 3, 2012.

The Defendant is now before this court asserting three assignments of error. Therein, he contends the evidence is insufficient to support his conviction, his sentence is excessive, and supplemental materials may reveal erroneously denied challenges for cause or *Batson* challenges.

**FACTS:**

The Defendant ran a stop sign at the intersection of Louisiana 127 and Highway 165 in Olla on September 19, 2009, and was stopped by Officer Steve Poole. Upon exiting his vehicle, the Defendant told Officer Poole that he was driving under suspension. The Defendant was then arrested and read his *Miranda* rights. The Defendant subsequently admitted he had illegal narcotics on his person and in his truck. The Defendant pulled a bag of marijuana from the waistband of his pants and told Officer Poole there was a bag of marijuana in a backpack that was in a toolbox in the truck.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, the Defendant contends the evidence adduced at trial was insufficient to support a conviction for possession of marijuana with intent to distribute. He argues the State failed to prove he had the intent to distribute the marijuana.

> There is sufficient evidence for conviction if the appellate court determines that "the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Hobley*, 98–2460, p. 33 (La.12/15/99), 752 So.2d 771, 790, *cert. denied*, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000).

*State v. Bivens*, 11-156, p. 4 (La.App. 3 Cir. 10/5/11), 74 So.3d 782, 788, *writ denied*, 11-2494 (La. 3/30/12), 85 So.3d 115.

The Defendant was convicted of possession of marijuana with intent to distribute. Thus, the State was required to prove beyond a reasonable doubt that the Defendant had the specific intent to distribute the marijuana. *State v. Hunter*, 09-1487, p. 2 (La.App. 3 Cir. 6/2/10), 41 So.3d 546, 549.

> "Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred." *State v. Hearold*, 603 So.2d 731, 735 (La.1992) (citations omitted). There are five factors courts consider to determine whether an intent to distribute can be inferred:
>
> > 1) whether the defendant ever distributed or attempted to distribute the drug; 2) whether the drug was in a form usually associated with possession for distribution to others; 3) whether the amount of drug created an inference of an intent to distribute; 4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and 5) whether there was any

2

paraphernalia, such as baggies or scales, evidencing an intent to distribute.

*Id.*

*Bivens*, 74 So.3d at 790. "Mere possession of marijuana is not evidence of intent to distribute it unless the quantity is so large that no other inference is reasonable. *State v. House*, 325 So.2d 222 (La.[] 1975)." *State v. Greenway*, 422 So.2d 1146, 1148 (La.1982).

Trooper Charles Turnage testified that he weighed the marijuana found and it weighed 368 to 370 grams, and a gallon plastic bag weighed fifteen and one-half grams. He agreed that the marijuana had previously been weighed and was heavier. Trooper Turnage and the trial court then calculated there were 451 grams in one pound.

Trooper Turnage testified that the average size joint contained half a gram of marijuana, and a large joint would contain approximately three-fourths of a gram of marijuana. Trooper Turnage stated that a heavy user would smoke about two grams of marijuana a day. He also stated that a 400 gram package of marijuana would last a heavy smoker using two grams a day 200 days. Trooper Turnage testified that, in his experience, it was not typical of a drug user to purchase a 200-day supply. Trooper Turnage further stated that, if a person smoked five blunts a day composed of two grams of marijuana each, the person would use a pound of marijuana in approximately forty-five days.

Trooper Turnage testified that he found a set of digital scales inside a compact disc case in the console of the Defendant's truck. Trooper Turnage testified that scales would be used to weigh drugs when buying and selling. He stated that fifty percent of the time, a common user would bring a scale to a drug

buy. However, he testified this would not be the case with the purchase of "nickel and dime sacks."

Trooper Turnage testified that he had purchased a pound of marijuana in the past and did not bring scales with him because he would need a scale the whole package could sit on in order to get an accurate weight. When asked what type of scale would be used, Trooper Turnage responded:

> Well, you've got some triple beams there, I would not bring that on a dope deal, I'm sorry. Because most of the time I'm going to meet at somebody's, if I meet at somebody's house they're going to have a set. If I meet in a parking lot . . . that's going to look, that's just too far-fetched.

Trooper Turnage testified that he had never investigated the Defendant for dealing drugs. He indicated that it was typical to find cash on a person arrested for dealing drugs, and it would not be uncommon for the cash to be fives or tens. Conversely, no cash was found on the Defendant at the time of his arrest. Additionally, no weapons were found on the Defendant.

Trooper Turnage testified the marijuana found in this case was not packaged in small bags, and no empty bags or cellophane were found. Trooper Turnage testified that drugs packaged in smaller bags would be more indicative of intent to distribute. Additionally, having a single package of marijuana with a bunch of empty Ziplock bags "decreases . . . slightly from the scenario where you've already got it packaged." "[B]ut . . . it weighs heavier than just having that one single bag."

Trooper Turnage testified there was a small partially used marijuana cigarette in the small package of marijuana the Defendant pulled from his waistband and a package of Zig-Zags in the purse of the passenger. Trooper Turnage stated these things "could go with personal consumption."

4

Trooper Turnage was questioned regarding the purchase of marijuana in bulk as follows:

Q     Okay. I'm saying is it common, doesn't [sic] you think it makes sense for someone with a severe marijuana problem to use that same theory of economics? In other words, to buy in bulk as verse, buy-

A     I would say it makes good sense.

Q     It makes good sense, right? Okay. So, in your, and I think you answered this earlier, in your practice it's not uncommon for people who purchase marijuana to buy in bulk, right?

A     It's not uncommon for people who purchase marijuana to buy in bulk.

Q     To buy in bulk. As opposed to buying a whole bunch of nickel sacks or dime sacks?

A     I will say that if, normally, if I'm going to buy just for my personal use, for a day-to-day basis, I'm not going to buy that large, of course, I don't smoke weed-

. . . .

A     And I, you're right, I don't have knowledge of what it would have on me as a person. I would say that, you know, each person is-

Q     Different.

A     -diferent [sic]. There's a lot of variables and is what you're asking is-

Q     Impossible.

A     -would somebody choose to go to Sam's versus the corner store. You ask yourself also risk, you know, what is the risk here?

Trooper Turnage was further questioned as follows:

Q     So, I'm going to Holden to get my marijuana. It would probably be safer for me to buy in bulk as opposed to making a trip every weekend to get an ounce. It would probably be safer for me to get a pound in one trip, wouldn't you think?

A     If the only person that I'm going to go to is that person down there at Holden-

Q     Uh-huh (yes).

A     -and I'm going to travel from here, then that analogy makes sense to me.

Trooper Turnage agreed that possession of a pound of marijuana was not a one hundred percent guarantee that a person was selling marijuana. He testified that a pound of marijuana was worth $600 to $1,000.

The Defendant contends the evidence was insufficient to prove he had the specific intent to distribute the marijuana he possessed. In support of this argument, the Defendant cites *State v. Cho*, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, *writ denied*, 02-2874 (La. 4/4/03), 840 So.2d 1213, for the proposition that an average user could smoke a pound of marijuana in less than two months. In *Cho*, a police officer testified that a pound of marijuana would make 448 large blunts, and he made a calculation based on an average user smoking ten marijuana cigarettes a day. The Defendant also asserts that, at the sentencing hearing, he stated he was a very heavy marijuana user and smoked all day every day. Additionally, based on the evidence presented regarding the bulk purchase of marijuana and his heavy use, his possession of slightly less than a pound of marijuana should not create an inference of intent to distribute and was not inconsistent with personal use.

The expert testimony presented in *Cho* and the Defendant's remarks regarding his marijuana use were not before the jury in the case at bar. Such calculations and remarks cannot be considered by this court in its review of the sufficiency of the evidence. Uniform Rules—Courts of Appeal, Rule 1-3.

In support of its argument that the evidence was sufficient to support the Defendant's conviction, the State cites *State v. Decuir*, 599 So.2d 358 (La.App. 3 Cir.), *writ denied*, 605 So.2d 1095 (La.1992). The State asserts that therein, this court found that possession of marijuana in an amount that would produce almost

6

500 cigarettes, along with paraphernalia that included a box of sandwich bags, a scale, a pipe, a roach clip, scissors, and rolling papers was sufficient to support an inference that the defendant intended to distribute marijuana. The State asserts the Defendant in the case at bar possessed almost three times as much marijuana as the defendant in *Decuir* did. The police officers in *Decuir* found 126 grams of marijuana. Testimony by police indicated that one gram of marijuana made four cigarettes and the total amount of marijuana found would produce almost 500 cigarettes.

Here, Trooper Turnage testified that the amount of marijuana found was not a one hundred percent guarantee that a person was selling marijuana, however, it was not typical for a drug user to buy a 200-day supply. The Defendant possessed paraphernalia in the form of a scale found inside the truck's console and Zig-Zags found in the purse of the truck's passenger. Additionally, there was a small, partially used marijuana cigarette inside the package of marijuana the Defendant removed from his waistband.

Trooper Turnage testified the scale he found could be used for weighing drugs at the time of purchase by the Defendant or by the Defendant for sale to individuals. Further, Trooper Turnage testified that a buyer could bring a scale to a drug buy fifty percent of the time.

In *State v. Sibley*, 310 So.2d 100 (La.1975), police found eleven packets of marijuana in two houses belonging to the defendant and his automobile. The marijuana was found in several plastic bags. The supreme court found "there was evidence establishing that defendant possessed enough marijuana for 600 cigarettes. Intent to distribute could be inferred from this circumstance." *Id.* at 103.

In *State v. Francois*, 03-1313, p. 4 (La. 4/14/04), 874 So.2d 125, 128 our supreme court stated:

> In cases involving circumstantial evidence, when the jury reasonably rejects the hypothesis of innocence advanced by the defense, "that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984). In the present case, respondent Francois's attorney put the issue of intent squarely before the jury . . . .

In *State v. Love*, 06-539, p. 10 (La.App. 4 Cir. 12/6/06), 947 So.2d 161, 166-67, the fourth circuit stated:

> The jury in this matter was presented with a reasonable hypothesis of innocence and rejected it. This Court's function is not to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence, but instead to "assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt." *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). (citing 2 C. Wright, Federal Practice and Procedure, Criminal 2d, § 467, at 465-466 (1982)). Furthermore, this Court "cannot substitute its idea of what the verdict should be for that of the jury." *Id.* This Court is also "constitutionally precluded from acting as a 'thirteenth juror' in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact." *State v. Mitchell*, p. 8, 1999-3342 (La.10/17/00), 772 So.2d 78, citing *State v. Azema*, 633 So.2d 723, 727 (La.App. 1 Cir.1993). Applying this standard, this Court must conclude that the jury's verdict was a fundamental denial of due process before it can reverse the jury's verdict. *State v. Mitchell*.

Based on *Sibley*, 310 So.2d 100, and the jury's rejection of the Defendant's argument that the marijuana was purchased in bulk for personal use, we affirm the Defendant's conviction.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, the Defendant contends the sentence of twenty years was excessive under the facts and circumstances of this case. We do not agree.

The Defendant was sentenced on August 31, 2010, and defense counsel orally objected to the sentence but failed to state specific grounds for the objection.

The Defendant then filed a motion to reconsider sentence on October 1, 2010, alleging his sentence was excessive. The trial court denied the motion as untimely filed.

In *State v. Gordon*, 11-898, p. 2 (La.App. 3 Cir. 2/22/12), 85 So.3d 242, 244, *writ denied*, 12-659 (La. 9/14/12), 97 So.3d 1015; and *State v. Barling*, 00-1241, 01-1591 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, this court noted that defense counsels made an oral objection to the sentence but did not specify the grounds for the objection. This court went on to perform a "bare bones" review of the sentences for constitutional excessiveness.

> A panel of this court summarized the standard to be used in reviewing excessive sentence claims in *State v. Davenport*, 07-254, pp. 3-4 (La.App. 3 Cir. 10/3/07), 967 So.2d 563, 565, stating:
>
> > The Eighth Amendment to the United States Constitution and La. Const. art. 1, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) [ ( ] quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Nevertheless, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. "Maximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> In making this determination, the appellate court may take into account several factors, including "the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes." *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846

So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061. However, the appellate court should remain mindful that the sentence should be particularized to the individual defendant and the particular offense committed. *State v. Wagner*, 07-128 (La.App. 3 Cir. 11/5/08), 996 So.2d 1208.

*State v. Skinner*, 11-703, pp. 3-4 (La.App. 3 Cir. 2/1/12), 84 So.3d 760, 763 (alterations in original).

The Defendant was convicted of possession of marijuana with intent to distribute, which is punishable by five to thirty years imprisonment and a fine of not more than $50,000. La.R.S. 40:966(B)(3). The Defendant was sentenced to serve twenty years at hard labor and was not ordered to pay a fine.

At the sentencing hearing, the Defendant informed the trial court that he had been using marijuana since the age of twelve and had been in trouble in the past, but drugs had never been the basis for such. The trial court subsequently sentenced the Defendant, noting he was twenty-seven years old and a fourth felony offender. The trial court then discussed the Defendant's criminal history and its reasons for the sentence imposed, stating the following:

> [Y]ou pled guilty to simple burglary on March 23, 2001, for an event that occurred on September 10, 2000. As part of that plea you received a sentence of three years at hard labor in the custody of the Department of Corrections and those three years were suspended and you were placed on three years of active supervised probation. You were next arrested on June 28, 2001, and charged with the unauthorized use of a movable, along with several other crimes. For the charge of unauthorized use of a movable, you received another sentence of three years at hard labor in the custody of the Department of Corrections, which is again, suspended. You were also placed on three years active supervised probation for that conviction as well. Some time afterward your probation was revoked. Finally, on May 25, 2004, you were sentenced on another simple burglary charge in Caldwell Parish to two years at hard labor for an incident which occurred on October 19, 2003, and this constituted your third felony offense. Subsequent to your felony convictions starting in May of 2005, you were arrested to [sic] the charge of simple burglary, but pled two months later to a charge of disturbing the peace. In May of 2008, you again returned to crime, entering a pre-trial diversion program for simple battery. Pleading guilty to the misdemeanor of driving while intoxicated in January of 2009, concerning an incident

10

that happened in July of 2008, and finally, you were arrested on the instance [sic] charges on September 2009. Your continued criminal history, shows that you engaged in felony criminal activity since you were 18 years old. Basically, it's the entire time that you've been an adult, you've been engaged in felony criminal activity. You've either been in jail or you've life [sic] somewhat restricted on all these occasions because of your continued criminal activity. And your continued violation of the restrictions placed upon you show to me that you don't take the rules of society really very seriously as it relates to criminal activity. The pattern of conduct that you exhibit shows me that you do not understand boundaries and that you place your desires and wants above that of society, and expectations as shown by its law. No information has been provided to me as to any profession or trade that you may possess, so I can only assume that the only way you earn income to support yourself is stealing others belongings or through the sale of drugs. This is simply unacceptable in today's society. Because of your past actions, I must find that there is an undue risk that you would commit another crime if you were given a suspended sentence or placed on probation. Additionally, the record is clear that you cannot effectively participate in a free society. It appears from the information provided to me that if you are not in the custody of the State of Louisiana, you are committing criminal acts. Accordingly, given your continued extensive criminal history, as well as the instant drug charges on which your plea is based, on which your conviction is based, I believe you're in need of correctional treatment that can be provided most effectively by committed [sic] to an institution. Possession of marijuana with intent to distribute is a serious offense and it will not be treated lightly in this Court. The jury found that the marijuana in your possession was packaged to sell. I understand what you say it was for personal use. However, a jury of your peers indicated otherwise. And you also had the tools by which to accomplish, the division of that large amount of marijuana into smaller quantities. This shows to me that you intended to prey on the weakness of others and potentially make a profit on the sale of this poison. This is not even a situation where treatment can help you. There is no allegations [sic] of use or your addiction to your illegal substances other than your own self-serving statement that you provided to me this morning. The only addiction I see is that you have is to other people's stuff and acquiring their property through whatever means is necessary. Therefore, I believe that a lesser sentence would deprecate the seriousness of the offense charged. As indicated earlier, it's [sic] part of the Pre-sentence Investigation Report I was provided information that you are 27 years old. I have no information as to any persons that may rely on you for support. However, the report indicates that you have not been able to maintain consistent employment, have no outstanding or marketable skill, and a limited education. Therefore, it seems the only way a free [sic] society for you to make a living is by stealing others property or selling drugs. This mitigates against - excuse me – this mitigates toward a sentence of incarceration.

The Defendant contends that costing the taxpayers of the State $20,000 per year for twenty years is grossly disproportionate to the offense, as he is not a marijuana dealer, smoked marijuana religiously since the age of twelve, and none of his prior offense demonstrate dangerous or violent tendencies. The State asserts the Defendant's sentence is not excessive and cites *State v. Cass*, 46,228 (La.App. 2 Cir. 4/13/11), 61 So.3d 840, *writ denied*, 11-1006 (La. 11/4/11), 75 So.3d 922; and *State v. Jones*, 09-688 (La.App. 5 Cir. 2/9/10), 33 So.3d 306, in support of its argument.

In *Cass*, 61 So.3d 840, the defendant was convicted of possession of marijuana with intent to distribute and adjudicated a second felony offender. He was then sentenced to forty years at hard labor.

In *Jones*, 33 So.3d 306, the defendant was convicted of possession of marijuana with intent to distribute and sentenced to the maximum term of thirty years at hard labor, but no fine was imposed. The fifth circuit found the sentence was not excessive, noting the defendant had two prior convictions for drug offenses, numerous arrests for serious charges, had two additional weapons convictions and two additional drug convictions at the time of the possession of marijuana with intent to distribute conviction, ran from the police almost striking an officer with his car, and possessed a loaded gun.

In *State v. Jackson*, 07-975 (La.App. 5 Cir. 4/15/08), 985 So.2d 246, the defendant was convicted of possession of marijuana with intent to distribute for possessing 10.5 grams of marijuana and was sentenced to eighteen years at hard labor. The fifth circuit found the sentence was not excessive based on the defendant's criminal history, which included a conviction for manslaughter. The Defendant in the case at bar possessed significantly more marijuana than Jackson did. However, Jackson had a prior conviction for a violent felony, and the

Defendant has two prior convictions for simple burglary and one for unauthorized use of a movable.

In *State v. Moton*, 35,150 (La.App. 2 Cir. 8/22/01), 793 So.2d 1269, the defendant was sentenced to twenty years at hard labor for possession with intent to distribute marijuana. The second circuit found the sentence was not excessive in light of the fact that Moton had a prior conviction for possession of cocaine, a record of assaultive behavior, and two felony convictions for fleeing from police officers. Additionally, the offense involved over ten pounds of marijuana, and, at the time of his arrest, the defendant had absconded from parole in Ohio and was wanted on an active Ohio arrest warrant. The cases are similar in that both Moton and the Defendant were sentenced for a fourth felony offense.

In light of the sentences imposed in *Jackson*, 985 So.2d 246, and *Moton*, 793 So.2d 1269, we find the Defendant's sentence is not excessive. Therefore, we affirm the sentence.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, the Defendant asserted the requested supplemental materials may reveal erroneously denied challenges for cause of *Batson* challenges.

In brief, the Defendant noted the transcript of jury selection was not included in the record at the time of filing and a motion to supplement, requesting a transcript of jury selection, was filed. The Defendant sought leave of court to file a supplemental brief in the event the transcript of jury selection revealed any errors.

No supplemental brief was filed in this matter. Thus, the Defendant has presented this court with nothing to adjudicate.

13

**DECREE:**

The Defendant's conviction and sentence are affirmed.

**AFFIRMED.**