ROSEMARY LEDET, Judge.
hln this criminal appeal, the defendant, Novell Campbell, seeks review of his conviction and sentence for possession with intent to distribute cocaine, in violation of La. R.S. 40:967 A(l). For the reasons that *1179 follow, we affirm his conviction and sentence.

STATEMENT OF THE CASE

On August 17, 2010, Mr. Campbell was charged by bill of indictment with one count of possession with intent to distribute cocaine. On August 30, 2010, Mr. Campbell was arraigned and pled not guilty. On November 18, 2010, Mr. Campbell filed various motions, including a motion to suppress evidence. On January 28, 2011, the district court denied the motion to suppress. On March 7, 2012, a jury trial commenced. On the following day, the jury found Mr. Campbell guilty as charged.
On April 5, 2013, the State filed a multiple bill, charging Mr. Campbell as a third felony offender. On April 12, 2013, Mr. Campbell filed motions for new trial and for post-verdict judgment of acquittal. Thereafter, he was appointed new | ^counsel. On February 4, 2014, his new counsel filed a motion for new trial. On April 16, 2014, Mr. Campbell filed a motion to quash the multiple bill, which the district court denied on April 23, 2014. On that same date, a hearing was held on the multiple bill; and the district court adjudicated Mr. Campbell a third felony offender. On March 11, 2014, the district court denied Mr. Campbell’s motion for new trial based on the showing made.
On May 22, 2014, the district court conducted a sentencing hearing. The district court denied Mr. Campbell’s motion seeking a downward departure from the statutory minimum sentence and sentenced him to twenty years at hard labor for this offense. The district court then vacated that sentence and re-sentenced Mr. Campbell as a third felony offender to twenty years at hard labor with the first two years to be served without benefit of parole. This appeal followed.

STATEMENT OF THE FACTS

On August 12, 2010, New Orleans Police Department (“NOPD”) Detective Harry Stovall was assigned to the Second District Narcotics unit. On that date, he executed a search warrant for 1438 Joliet Street in New Orleans, Louisiana. Detective Sto-vall described the structure on the Joliet Street property as a fenced, single family residence with a backyard containing a shed, which had been converted into a bedroom. The search warrant for the Joliet Street property was obtained based on information provided by a confidential informant. The confidential informant provided the NOPD with a tip that an individual known as “Novell” (later identified as Mr. Campbell) was selling narcotics from that address. |sTo corroborate the tip, Detective Stovall, with the confidential informant’s assistance, conducted a controlled purchase from the Joliet street address. Officer Stovall then obtained a search warrant for that address.
After obtaining the search warrant, Detective Stovall conducted “pre-warrant surveillance” — surveillance of the targeted location to ascertain if the target of the investigation is present there. From a concealed location, Detective Stovall viewed the residence and shed on the Joliet property with binoculars; and he communicated with his take-down team, which was made up of multiple officers. Detective Stovall testified that during the pre-warrant surveillance he “noticed the door to the shed that opened and ... could see the top of Mr. Campbell’s head coming out of that shed into the backyard. [Mr. Campbell] began to loiter around the backyard, look over the fence, up and down the streets, and then he went back in.” At that point, Detective Stovall communicated to the take-down team to enter the structure and to secure the location.
*1180 The take down team divided into two groups. One group — Sergeant Samuel Pa-lumbo, Jr., and Detective Mike Lorio— entered the shed; the other group entered the residence. After knocking on the shed door and announcing their presence, Sergeant Palumbo and Detective Lorio entered the shed. Both Sergeant Palumbo and Detective Lorio described the shed as a small room containing a bed, dresser, television stand, and nightstand. Upon entering the shed, Sergeant Palumbo and Detective Lorio found Mr. Campbell standing next to the dresser and his female companion, Joelle Perkins, sitting on the bed. Both Mr. Campbell and Ms. Perkins |4were handcuffed and relocated to the residence, where three other individuals, who the second group of officers found in the residence, were being detained. One of those three individuals was Mr. Campbell’s mother, Ms. Alberta Campbell Augustus, who apparently owned the residence.
After the scene was secured, Detective Stovall arrived with the search warrant and advised the subjects of their Miranda rights.[1] While they were waiting for a canine narcotics dog, Detective Stovall, Sergeant Palumbo, and Detective Lorio searched the shed; the other officers searched the residence. During the search of the shed, Detective Stovall recovered two clear plastic bags that were in plain view on the top of the dresser. He testified that “each one of them [the bags] contained a total of 9 pieces of crack cocaine.” He described the cocaine as “[i]n-dividually packaged, individually wrapped.” Sergeant Palumbo located $200.00 in cash and a bag of marijuana on the nightstand next to the bed. Detective Lorio located on the television stand three documents — two medical bills and a medical appointment notice — addressed to Mr. Campbell. One document was addressed to the Joliet Street address; the other two were addressed to the Jeannette Street address.[2] Detective Lorio explained that both 1438 Joliet Street and [ fi8502 Jeannette Street are on the same plot of land. The main residence faces Joliet Street, and the shed faces Jeannette Street.[3]
Sergeant O’Brien testified that during his search of the residence, he recovered two “Good Sense” sandwich bags, a razor blade, and an empty digital scale box. These three items were found together on top of a shelf inside one of the kitchen cabinets. Sergeant O’Brien turned these items over to Detective Stovall to be inventoried. Detective Stovall testified that the razor blade contained a residue.
At trial, the State and the defense stipulated that if Criminalist Nhon Hoang testified, he would confirm that the substances found in the shed tested positive for cocaine and marijuana, respectively. The State also introduced into evidence the criminalist’s lab report, which identified the substances found in the shed as cocaine and marijuana.
The sole defense witness at trial was Ms. Augustus. Ms. Augustus’ direct testimony was limited to her recollection of the events that occurred on August 12, 2010, during the execution of the search *1181 warrant for her residence located at 1438 Joliet Street.[4] On cross-examination, Ms. Augustus verified that 8502 Jeannette Street and 1438 Joliet Street were part of the same parcel of land. The shed bore the Jeannette Street address; whereas, the municipal address for the ^residence was listed as 1438 Joliet Street. Although she initially denied that Mr. Campbell lived with her, she recanted her testimony after reviewing Mr. Campbell’s bond dated August 13, 2013. This bond, which Ms. Augustus signed as surety, listed Mr. Campbell’s address as “1438 Joliet/8502 Jeannette.” After reviewing the bond, she testified that she remembered that her son lived with her for a while when he was released from prison. Ms. Augustus, however, adamantly denied that her son sold drugs from her residence.
The State then recalled Detective Sto-vall in rebuttal to testify about the pre-warrant controlled purchase of cocaine from Mr. Campbell at the Joliet Street address. Detective Stovall testified that on August 4, 2010, he received a tip from,a confidential informant advising that Mr. Campbell was selling narcotics from 1438 Joliet Street. Based on that tip, Detective Stovall arranged a controlled purchase at that address.
Detective Stovall explained that before proceeding with the controlled purchase, he searched the confidential informant to insure that he was not carrying any contraband. Detective Stovall supplied the confidential informant with department issued funds for the purchase and drove him to the targeted location. With the use of binoculars, Detective Stovall observed Mr. Campbell engage the confidential informant. Detective Stovall observed Mr. Campbell enter the shed, return to the confidential informant, and hand over the contraband in exchange for the currency the confidential informant tendered. Upon completing the purchase, the confidential informant returned to Detective Stovall and surrendered the contraband. Detective Stovall then obtained a search warrant for the targeted premises. A few days later, Detective Stovall set up the pre-warrant surveillance, |7which he testified about in the State’s case-in-chief. When he was certain that Mr. Campbell was at the targeted location, Detective Sto-vall signaled the take down team to execute the search warrant. As a result of the evidence found in executing the warrant, the officers arrested Mr. Campbell for possession with intent to distribute cocaine.

DISCUSSION

Errors Patent

A review of the record for errors patent reveals none.

Sufficiency of the evidence

In his second assignment of error, Mr. Campbell contends that the evidence presented at trial was insufficient to support his conviction of possession with intent to distribute cocaine. Mr. Campbell’s sufficiency of the evidence argument is twofold. First, he contends that the evidence did not establish possession. Second, he contends that the evidence did not demonstrate the requisite intent to distribute.
*1182 We address Mr. Campbell’s second • assignment of error first in accordance with the well-settled jurisprudential rule that “ ‘[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.’ ” State v. Miner, 14-0939, p. 5 (La.App. 4 Cir. 3/11/15), 163 So.3d 132, 135 (quoting State v. Hearold, 603 So.2d 731, 734 (La.1992)).
The standard for determining an insufficiency of evidence claim is well-settled. As the Louisiana Supreme Court noted in State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the standard is as follows:
|sWhen reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674 (La.6/29/01) 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
Id. It is also well settled that “[i]t is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.” State v. Richards, 11-0349, p. 9 (La.App. 4 Cir. 12/1/11), 78 So.3d 864, 869 (citing State v. Cummings, 668 So.2d 1132 (La.1996); State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
“The determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence.” Richards, supra (citing State v. Vessell, 450 So.2d 938, 943 (La.1984)). “Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’ testimony, if believed by the fact finder, is sufficient to support a factual conclusion.” State v. Rapp, 14-0633, pp. 6-7 (La.App. 4 Cir. 2/18/15), 161 So.3d 103, 108 (citing State v. Marshall, 04-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369).
In this case, Mr. Campbell was charged with and convicted of possession with the intent to distribute cocaine in violation of La. R.S. 40:967 A(l), which | ¡^provides that “it shall be unlawful for any person to knowingly or intentionally ... possess with intent to ... distribute ... a controlled dangerous substance or controlled substance analogue classified in Schedule II.” Cocaine is one of the controlled dangerous substances classified in Schedule II. La. R.S. 40:964, Schedule II, A(4). To sustain its burden, the State was required to establish that Mr. Campbell intentionally possessed the cocaine and that he had the specific intent to distribute it. See State v. Howard, 00-2700, p. 22 (La.App. 4 Cir. 1/23/02), 805 So.2d 1247, 1261 (citing State v. Williams, 594 So.2d 476, 478 (La.App. 4th Cir.1992)). Mr. Campbell contends that the State failed to establish either the possession or the distribution *1183 element. We separately address each of those elements.

Possession

To support a conviction for possession of a controlled dangerous substance in violation of La. R.S. 40:967, the elements the State must prove include that the defendant knowingly and intentionally possessed the drug. State v. Keys, 12-1177, p. 5 (La.App. 4 Cir. 9/4/13), 125 So.3d 19, 27, writ denied, 13-2367 (La.4/4/14), 135 So.3d 637 (citing State v. Perron, 01-0214, p. 6 (La.App. 4 Cir. 1/16/02), 806 So.2d 924, 928). Since knowledge and intent are states of mind, they need not be proven as facts; rather, they may be inferred from the circumstances. State v. Major, 03-3522, pp. 8-9 (La.12/1/04), 888 So.2d 798, 803.
Proof of a defendant’s constructive possession is sufficient to support a conviction; the defendant need not actually possess the controlled dangerous | insubstance. Perron, supra (citing State v. Trahan, 425 So.2d 1222, 1226 (La.1983)). A person not in actual physical possession of drugs may have constructive possession if the drugs are under that person’s dominion and control. Perron, supra (citing State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4th Cir.1990)). Whether a defendant had constructive possession at the time of the offense is determined based upon the particular circumstances of the case. Perron, supra (citing State v. Cann, 319 So.2d 396, 397 (La.1975)).
The jurisprudence has identified the following factors to be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession: (i) whether the defendant knew that illegal drugs were present in the area; (ii) the defendant’s relationship to the person in actual possession of the drugs; (iii) whether there is evidence of recent drug use; the defendant’s proximity to the drugs; and (iv) any evidence that the area is frequented by drug users. Keys, 12-1177 at p. 6, 125 So.3d at 27 (citing State v. Allen, 96-138, p. 5 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, 1020); see also State v. Toups, 01-1875, p. 4 (La.10/15/02), 833 So.2d 910, 913. The mere presence of the defendant in an area where drugs are found is insufficient to prove constructive possession. State v. Collins, 584 So.2d 356, 360 (La.App. 4th Cir.1991); State v. Bell, 566 So.2d 959, 959 (La.1990).
 Mr. Campbell contends that there is insufficient evidence to establish that he had either actual or constructive possession of the cocaine. He emphasizes that when the officers arrived, he was standing next to the dresser on which the cocaine In was found. He was neither holding nor touching the cocaine. Nor did he make an attempt to retrieve it. As to constructive possession, Mr. Campbell stresses that neither Sergeant Palumbo nor Detective Lorio observed the cocaine on top the dresser when they entered the shed; rather, Detective Stovall found it when he subsequently entered the shed. Likewise, he contends that it is “equally possible [he] may not have had knowledge of the drug’s presence on the dresser to prove constructive possession.” He further contends that the State failed to present any evidence conclusively linking the cocaine to him. Particularly, he points out the State’s failure to obtain fingerprint or DNA evidence linking him to the cocaine. Finally, he contends that the State failed to negate at least one reasonable hypothesis of his innocence — that Ms. Perkins, the other person present in the shed when the police arrived, possessed the cocaine. Mr. Campbell thus submits that the State’s sole evidence from which to infer possession was that the cocaine was found in the shed where he slept.
*1184 The State counters that the officers found Mr. Campbell standing next to the dresser that had the two bags of cocaine in plain view sitting on top of it. His close proximity to the cocaine, the State contends, gives rise to an inference of dominion and control. Given the cocaine was in plain view, the State contends that it also evinces guilty knowledge. As to Mr. Campbell’s suggestion that Ms. Perkins possessed the cocaine, the State points out that constructive possession need not be exclusive. See State v. Harris, 585 So.2d 649, 651 (La.App. 4th Cir.1991) (noting that the defendant “exercised joint dominion and control over the drugs”). The 1 i;.State emphasizes that Mr. Campbell was occupying the small shed where he and the drugs were found.
The record reflects that Mr. Campbell was not found in actual possession of the cocaine. The cocaine was found sitting on top of the dresser in the shed, and Mr. Campbell was standing next to the dresser. Nonetheless, the record supports a finding that there was sufficient evidence to establish Mr. Campbell was in constructive possession of the cocaine. The following factors support this finding:
• Mr. Campbell was seen exiting the shed shortly before the drugs were discovered. Detective Stovall testified that during his pre-warrant surveillance he observed Mr. Campbell exit the shed and reenter it.
• Documentary evidence was recovered linking Mr. Campbell to the property. As noted, two medical bills and a medical appointment notice addressed to Mr. Campbell at the property were found. This demonstrates that Mr. Campbell was receiving mail addressed to him at the property at or near the time of the offense.
• The personal surety bond executed by Mr. Campbell’s mother lists Mr. Campbell’s address as “1438 Joliet/8502 Jeannette.”
• Mr. Campbell’s mother’s testified that she lived at that location and that Mr. Campbell had lived there as well.
• The shed contained a bed, sheets, a dresser and men’s clothing.
Based on the above evidence, the jury was not unreasonable in concluding that Mr. Campbell exercised dominion and control over the shed and the items in it, including the two bags of cocaine. Given the small physical dimensions of the shed, it was not unreasonable for the jury to conclude that one exercising control over the shed would also have knowledge and control over the cocaine in plain view sitting on the top of the dresser in the shed. Thus, contrary to Mr. Campbell’s 11scontention, sufficient evidence was presented for the jury to conclude Mr. Campbell had constructive possession of the cocaine.

Distribution

The second element the State was required to establish is that Mr. Campbell had specific intent to distribute the cocaine. Because intent is a state of mind, “[i]t is very unusual to have direct evidence of intent.” State v. Perkins, 97-1119, p. 16 (La.App. 3 Cir. 6/17/98), 716 So.2d 120, 129. Intent almost always must be proved by circumstantial evidence. See Hearold, 603 So.2d at 735. It follows then that specific intent to distribute may be established by proving circumstances surrounding the defendant’s possession that give rise to a reasonable inference of intent to distribute. Keys, 12-1177 at p. 7, 125 So.3d at 28 (citing State v. Dickerson, 538 So.2d 1063, 1071 (La.App. 4th Cir. 1989)).
To assist in determining whether circumstantial evidence is sufficient to establish specific intent to distribute, the Louisiana Supreme Court in the seminal case *1185 State v. House, 325 So.2d 222, 225 (La.1975), enumerated the following five factors:
1. whether the defendant ever distributed or attempted to distribute the drug;
2. whether the drug was in a form usually associated with possession for distribution to others;
3. whether the amount of drug created an inference of an intent to distribute;
4. whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only; and
5. whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
| uThe House factors are not exclusive; stated otherwise, the evidence supporting the presumption of intent to distribute need not “fall squarely within the [House ][5] factors ... to be sufficient for the jury to find that requisite intent to distribute.” Rapp, 14-0633 at p. 8, 161 So.3d at 109 (citing State v. Cushenberry, 94-1206, p. 6 (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786).
Mr. Campbell contends that assuming, arguendo, he had possession of the cocaine, the evidence presented at trial was insufficient to establish that he had the intent to distribute the cocaine. In support, he points out that the only other evidence besides the cocaine that the officers retrieved from the shed was a bag of marijuana and $200.00 in cash, neither of which are evidence of drug dealing. As to the $200.00 in cash, he contends that no evidence was presented regarding the “denominations of the currency, the amount confiscated, or even that the money existed in order to show that it was at all consistent with a drug dealer’s ‘bank.’” He further contends that the three items retrieved from the residence — two plastic sandwich bags, a single razor blade with unidentified residue, and an empty scale box — were found in the kitchen, which is where one would expect to find such items. As to the residue on the razor blade, he emphasizes that the State failed to test it. As to the empty scale box, he emphasizes that no scale was ever found in the house or the shed,- despite the search by the officers and a canine. Further, he |1Rnotes. that no evidence was introduced regarding how old the scale box was or how long ago, if ever, a scale was present in the residence.
The State counters that all of the House factors are present here. The State thus contends that the evidence is sufficient to support the jury’s finding that Mr. Campbell had the specific intent to distribute the cocaine.
Based on the totality of the circumstances and an analysis of the House factors, we conclude that there is sufficient evidence to establish Mr. Campbell’s intent to distribute the cocaine. In analyzing the House factors below, we consider the second and fifth factors together. We first, however, consider the óther three factors in order.
As to the first factor, Detective Stovall testified, on rebuttal, that cocaine was distributed to the confidential informant from the shed a few days before the search warrant was executed. Thus, the first factor is satisfied. See State v. Marshall, 02-1067, p. 10 (La.App. 5 Cir. 2/25/03), 841 *1186 So.2d 881, 889 (finding officer’s testimony that he saw the defendant apparently engaged in a drug deal satisfied this factor); see also State v. Kelly, 01-321, p. 7 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 984 (finding prior drug sales out of residence supported a finding of an intent to distribute).
As to the third factor, the mere possession of a controlled dangerous substance is not sufficient evidence of intent to distribute absent a quantity so large that no other reasonable inference can be made. State v. Tong, 609 So.2d 822, 824 (La.1992) (citing Hearold, 603 So.2d at 735). We note that no evidence of the L (¡weight of the cocaine was introduced at trial.[6] We further note that the record is unclear as to the number of pieces of cocaine that were found in the shed. The State in its appellee brief states that a total of “18 pieces of crack cocaine” were recovered from the shed, which it characterizes based on the jurisprudence as a “considerable amount.”[7] Mr. Campbell, on the other hand, states in his appellant brief that it was “[t]wo plastic bags containing a total of nine individually wrapped pieces of crack cocaine” that were recovered from the dresser in the shed.
At trial, Detective Stovall testified that he recovered two clear plastic bags that were on the top of the dresser and that “each one of them [the bags] contained a total of 9 pieces of crack cocaine.” His testimony suggests that there were eighteen pieces of cocaine. However, in opening argument at trial, the State’s attorney referred to the quantity of cocaine recovered as “two bags containing 10 rocks of crack cocaine sitting on the top open dresser.” In closing argument, the State’s attorney represented that the amount of cocaine Mr. Campbell knowingly and intentionally possessed was “nine rocks individually packaged.” At trial, Detective Stovall described the cocaine recovered as “individually packaged, individually wrapped.”
|17The only other evidence presented at trial as to the number of pieces of cocaine recovered was the criminalist’s report, which states that the two plastic bags contained the following:
One plastic bag containing nine (9) pieces of a “rock-like” substance each wrapped in plastic.... Positive for Cocaine.
One plastic sandwich bag containing several pieces of a “rocklike” substance .... Positive for Cocaine.
Although neither the exact number of pieces of cocaine nor the exact weight of the cocaine was determined at trial, the jury had the benefit of visually inspecting the cocaine found in the shed, which the State introduced into evidence. Based on its examination of the physical evidence, the jury was entitled to infer from the quantity and packaging — the second factor discussed below — that the cocaine was intended for distribution.
As to the fourth factor, the State presented no direct evidence regarding whether the amount of cocaine was inconsistent with personal use only. Nonetheless, as the State points out, no paraphernalia associated with personal use or smoking of crack cocaine, such as a crack pipe, was found in either the residence or the shed. See State v. Scott, 09-1658, pp. *1187 8-9 (La.10/22/10), 48 So.3d 1080, 1085 (noting that intent to distribute was “evidenced also by the box of plastic baggies and razor blades ... and by the absence of any paraphernalia associated with the smoking of crack cocaine in the home.”).
As noted, we address the second and fifth factors together. The cocaine found in the shed was in a form generally associated with possession for distribution to others — the pieces were individually wrapped and inside a clear | isplastic bag.[8] See State v. Martin, 13-34, pp. 8-9 (La.App. 5 Cir. 6/27/13), 121 So.3d 170, 176, writ denied, 13-1744 (La.2/7/14), 131 So.3d 861 (noting that the intent to distribute can be inferred from the individual packaging of the cocaine, the lack of personal paraphernalia, and the fact that the cocaine was discovered in the possession of one person); State v. Vessel, 12-1543, p. 5 (La.App. 4 Cir. 1/10/14), 131 So.3d 523, 527, writ denied, 14-0393 (La.9/26/14), 149 So.3d 260 (noting the factors present that indicated an intent to distribute included “the numerous individually "wrapped foils of heroin packaged in rice.”).
The State presented the testimony of two narcotics officers, Sergeant O’Brien and Detective Stovall, regarding the paraphernalia found in the kitchen of the residence. Neither officer was qualified as an expert; they both testified based on their experience as narcotics officers.[9] Sergeant O’Brien testified that “[i]nside one of the kitchen cabinets on top of the shelf there was two Good Sense baggies, along with a razor blade and a box that contained a digital scale but the scale wasn’t in the box.”[10] Sergeant O’Brien described these as “items commonly used in the packaging of illegal drugs.” As noted, Sergeant O’Brien turned these items over to Detective Stovall for him to inventory them. Detective Stovall testified that the razor blade had a residue on it. Detective Stovall further testified that “[m]ost hapeople who sell narcotics will have a digital scale to weigh their narcotics. The razor will be utilized to cut it up in whatever shape and size that they would want to cut it up into prior to their packaging it.” As to the sandwich bags, he testified that “these are the baggies that were consistent with the baggies that was used to package the narcotics in.”
In closing argument, the State attempted to link the two bags of cocaine found in the shed to the paraphernalia found in the kitchen. The State’s attorney urged jurors to consider the following regarding those two plastic bags of cocaine found in the shed:
I can’t tell you how much crack cocaine he broke those rocks from.... I can tell you, it’s nine rocks individually packaged.
... You’re going to see shavings. You’re going to see shavings [of cocaine] broken out in another bag. You know what those shavings are? Those shavings are the pieces that fall off when he’s *1188 using that razor blade to break off the bigger pieces.... This isn’t an easy cut.
Look at those shavings and you will see what this is and how the razor blade relates. Because these are the tools of the trade.
We find the jury, which had the opportunity to view the physical evidence, could infer from the appearance of the cocaine — ■ the individual wrapping of at least nine pieces in one bag and the shavings or other loose pieces in the other bag — coupled with the paraphernalia found together in the kitchen cabinet of the residence— the empty scale box, razor with residue, and plastic baggies — that Mr. Campbell had the specific intent to distribute the cocaine.[11]
LnOur finding is buttressed by the Louisiana Supreme Court’s decision in State v. Francois, 02-2056 (La.App. 4 Cir. 4/9/03), 844 So.2d 1042, writ granted, 03-1313 (La.11/25/03), 864 So.2d 607, rev’d, 03-1313 (La.4/14/04), 874 So.2d 125. In Francois, the officers saw Mr. Francois using a spoon to scoop heroin onto pieces of foil; Mr. Kemp was folding the foil. The men thus were in the process of dividing the heroin into small amounts. The officers seized a plethora of paraphernalia including a plate with a mound of white powder on it, fourteen foil packages containing white powder, six empty foils, two pairs of scissors, a package of aluminum foil, pieces of foil that had been cut into squares, a small spoon, a small fork, a finger from a rubber glove which contained white residue, plastic bags containing residue, playing cards with residue on them, razor blades, a box of sandwich bags, and $178.00. Five to six grams of heroin were seized.
Analyzing House factors two and five together, this court in Francois found that “[bjased on [the officers’] testimony, the jury reasonably could have inferred that the foils of heroin that were being prepared indicated an intent to distribute [given that] the heroin was in a form associated with distribution.” Francois, 02-2056 at p. 9, 844 So.2d at 1048. We, however, found that factor was counterbalanced by the fact that the heroin was also in a form associated with personal consumption — it was measured out in small foil packets— and thus it was “quite plausible that Mr. Francois and Mr. Kemp were preparing the heroin for their own personal consumption.” Id. (citing State v. Green, 524 So.2d 927, 931 (La.App. 2d Cir.1988) (noting that the defendant may have purchased the drug in that form for personal use as opposed to possessing it in that form with the intent to distribute it to others)). ■ We further noted that neither officer testified that the packaging of heroin was inconsistent with personal use or that “drug dealers are 121 the only ones who divide their heroin into individual doses.” Francois, 02-2056 at p. 10, 844 So.2d at 1049. We still further noted that the officers seized no weapons, cutting agents, scales, or large amounts of cash in connection with the defendants’ arrests. We thus held that “the jury reasonably could have inferred that [respondents] were packaging the heroin for their own personal use.” Francois, 02-2056 at p. 11, 844 So.2d at 1049.
Reversing, the Louisiana Supreme Court reasoned as follows:
*1189 Even accepting defense counsel’s argument that addicts would not consume the entire amount at one time, the care with which respondents converted the heroin from bulk form to individual doses supported a reasonable inference that they used a common method of packaging drugs for distribution because they meant to sell the squares on the street as opposed to dividing up the heroin for their own personal use at a later time. Because that inference flowed logically from the overall evidence presented by the state, including the opinions offered by the arresting officers, see State v. Short, 96-1069, p. 4 (La.App. 4th Cir.5/7/97), 694 So.2d 549, 552 (officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable), jurors did not deprive respondents of their due process right to a fact finder’s rational decision making, [State v.] Mussall, 523 So.2d [1305,] 1310 [ (La.1988) ] by rejecting the more remote hypothesis that the packaging could have been for personal use as a basis for finding a reasonable doubt as to guilt that otherwise did not exist.
Francois, 03-1313 at pp. 4-5, 874 So.2d at 128. The Supreme Court thus reinstated the defendants’ conviction for possession with intent to distribute.
As in Francois, we find that the jury in this case logically could have inferred from the two bags of cocaine — one containing nine individually wrapped pieces and another apparently containing cocaine shavings or other loose pieces — coupled with the empty digital scale box, razor with an unidentified residue, and plastic baggies— which were all found stored together on the top shelf of a kitchen cabinet — that Mr. Campbell possessed the cocaine with the specific intent toj^distribute. Moreover, there was no personal drug use paraphernalia, such as a crack pipe, found in the residence or shed. The jury also was able to observe the physical evidence — the cocaine itself — and from the amount and packaging of the cocaine the jury logically could infer that the cocaine found in the two plastic bags in the shed was being held in that form with the intent to distribute it to others. We defer to the jury’s finding.
Viewing the totality of the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that Mr. Campbell possessed the cocaine found in the shed and that he did so with the specific intent to distribute it. All of the essential elements of the crime of possession of cocaine with intent to distribute were proven. This assignment of error is without merit.

Rebuttal Evidence

Mr. Campbell’s other assignment of error is that the district court impermis-sibly allowed the State to introduce, as rebuttal evidence, Detective Stovall’s testimony regarding the controlled purchase. Initially, the State argues that the defense failed to preserve this issue for review. The State contends that the bare assertion of an objection does not suffice; counsel must articulate the grounds therefor. See La.C.Cr.P. art. 841(A).[12]
[asThe defense did not immediately specify the basis for its objection to the State questioning Ms. Augustus about whether *1190 her son was a drug dealer. Immediately after Ms. Augustus denied that her son sold drugs, the trial judge held a meeting in her chambers to discuss the State’s rebuttal evidence. At that time, defense counsel stated:
Judge, my only objection would be, when the question was asked about dealing drugs from the home, I did object to the question. You allowed for her to answer. However, I think the question kind of got into character of [the defendant], in my opinion. That was the reason behind the objection. On that matter, the State was asking other questions that were leading to try to get in his previous criminal history.
Based on defense counsel’s statement quoted above, we find the issue was preserved for appeal. Defense counsel preserved the issue by specifying the reason for his objection to the questions concerning drug dealing. See State v. Mitchell, 94-521, p. 5 (La.App. 3 Cir. 11/2/94), 649 So.2d 569, 572 (noting that “[although the grounds for defendant’s objection are not recorded, this court may still review this assignment' of error.”). The State’s argument to the contrary is unpersuasive.
During cross-examination, the prosecutor asked Ms. Augustus how long her son had been dealing drugs from her house. Defense counsel objected to the question, and the district court overruled the objection. Ms. Augustus responded by denying that her son sold drugs. Shortly thereafter, the defense rested. When the judge called for the State’s rebuttal case, the parties entered the judge’s chambers for discussion and argument concerning the rebuttal evidence the State |g4planned to offer. The prosecutor informed the judge that because Ms. Augustus denied that her son sold drugs, it would seek to discredit her testimony by calling Detective Stovall to testify about the pre-war-rant controlled purchase of cocaine from Mr. Campbell at the Joliet Street address.
Claiming the State was attempting to introduce character and hearsay evidence, the defense objected to the rebuttal evidence. Moreover, the defense contended that the State’s cross-examination of Ms. Augustus exceeded the scope of its direct examination. Overruling the defense’s objection, the district court stated:
The court in its ruling is determining its admissibility of the pre-warrant surveillance and pre-warrant controlled buy. In light of the fact that Ms. Augustus took the stand and her beginning statements, which opened the door in this court’s opinion, began in response to the questions from the State about whether or not [the defendant] lived at the Joliet Street/Jeannette Street address, and she was in her answer adamant that her son did not live there, that maybe after he spend time in jail one time he did live there but she couldn’t remember for how long, whether or not he did, in fact, live there in in 2009, 2010.
The question came up about drugs being sold out of the house and Ms. Augustus was adamant that her son would never ever deal drugs out of the house and that she was sure, 200 percent sure, that he did not deal drugs.
The court finds that the defense put Ms. Augustus on before the jury and that she has left in the jury’s mind her testimony about that her son could not deal drugs, and the State has a right to rebut that by introducing evidence that they would not normally be allowed to introduce in their case in chief.
Again, the court rules that the defense opened the door.
A trial judge’s determination regarding the relevancy and admissibility of evidence will not be disturbed on appeal absent a clear abuse of discretion. State v. *1191 25Sandoval, 02-230, p. 11 (La.App. 5 Cir. 2/25/03), 841 So.2d 977, 985. Likewise, a trial judge’s ruling as to the scope and extent of cross-examination will not be disturbed on appeal absent a clear abuse of discretion. See State v. Irish, 00-2086, p. 7 (La.1/15/02), 807 So.2d 208, 213.
A witness may be cross-examined on any matter relevant to any issue in the case. La. C.E. art. 611 B. However, La. C.E. art. 404 A generally excludes the admission on cross-examination of evidence of the defendant’s character or a trait of his character for the purpose of proving he acted in conformity therewith on the occasion in question. Nonetheless, La. C.E. art. 404 A(l) allows admission on cross-examination of evidence of a pertinent trait of a defendant’s character offered by the prosecution to rebut evidence of the defendant’s good character admitted by the defense during its case-in-chief. A character witness may be cross-examined regarding relevant specific instances of conduct. La. C.E. art. 405 A.
Rebuttal evidence is defined as that “which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party.” State v. Tyler, 97-0338, p. 17 (La.9/9/98), 723 So.2d 939, 948-49. Rebuttal evidence is “ ‘evidence which has become relevant or important only as an effect of some evidence introduced by the other side.’ ” State v. Turner, 337 So.2d 455, 458 (La.1976) (quoting State v. Smith, 120 La. 530, 532, 45 So. 415 (1908)). The governing statutory provision on rebuttal evidence is La. C.E. art. 611 E, which provides that “the state in a criminal prosecution shall have the right to rebut evidence adduced by their opponents.”
| ;>fiMr. Campbell acknowledges that the State is entitled to rebut evidence adduced by the defense. He, however, contends that the controlled buy was not proper rebuttal evidence because the evidence the State sought to rebut was adduced by' the State, not by the defense. He points out that the defense did not pose any questions regarding drugs to Ms. Augustus; therefore, the defense was not the party that “opened the door” to that evidence, as the State suggests.
The State’s cross-examination of Ms. Augustus included the following colloquy:
Prosecutor: Do you know where [the defendant] was living in 2009?
Witness: No sir.
Prosecutor: Was he living with you?
Witness: I can’t — I don’t remember.
Prosecutor: So if there are numerous documents directed to him at 1438 Joliet Street and 8502 Jeannette Street back from 2009 and 2010, would you dispute that he was living with you at that point?
Witness: Yes, I would. I wouldn’t say he was living with me in 2009. I can’t recall. I don’t remember.
Q. Now, how long has your son been dealing drugs out of your house?
Defense: I’m going to object, your Hon- or.
Court: overruled.
Witness: My son doesn’t deal drugs ...
During the direct examination of Ms. Augustus, defense counsel neither elicited any evidence concerning Mr. Campbell’s character, nor questioned Ms. Augustus about her son’s drug dealing. Ms. Augustus did not testify as a character | ^witness; rather, she testified as a fact witness regarding the execution of the search warrant at her residence. The record supports Mr. Campbell’s contention that the State broached the subject of drug dealing, not the defense. Given that rebuttal evidence is defined as evidence that has become relevant or important only as an effect of some evidence introduced by the other side coupled with the fact that it was the State not the defense that raised the *1192 subject of drug dealing, the district court erred by ruling that'the defense “opened the door.” The district court thus abused its discretion by allowing the State to introduce evidence of the controlled buy on rebuttal.
Nevertheless, the erroneous admission of such other crimes evidence is subject to harmless error analysis. “Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational fact finder and asks whether beyond a reasonable doubt the error could not have contributed to the^ verdict actually returned by the defendant’s jury.” State v. Gibbs, 41,062, p. 8 (La.App. 2 Cir. 6/28/06), 935 So.2d 349, 354; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. The harmless error inquiry thus “is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” . Gibbs, supra (citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). Stated otherwise, harmless error exists when the guilty verdict actually rendered hswas “surely unattributable” to the error. State v. Higginbotham, 11-0564, p. 3 (La.5/6/11), 60 So.3d 621, 623.
We find that the evidence at trial, exclusive of evidence of the State’s rebuttal evidence regarding the controlled purchase, was sufficient to convince á rational trier of fact beyond a reasonable doubt that Mr. Campbell was guilty of possession with intent to distribute cocaine. Taken together, the evidence presented in the State’s case-in-chief regarding the quantity and packaging of the cocaine found in the shed; the items found together in the kitchen of the residence (the empty digital scale box, razor with residue on it, and plastic baggies); and the lack of paraphernalia associated with the personal use or smoking of cocaine in the shed or residence was sufficient for the jury to find Mr. Campbell guilty of possession with intent to distribute cocaine. Even in the absence of Detective Stovall’s rebuttal testimony regarding the controlled purchase, the evidence, viewed in the light most favorable to the prosecution, was sufficient for the jury to conclude that the element of intent to distribute was proved beyond a reasonable doubt, making any alleged error in the admission of Officer Stovall’s rebuttal testimony harmless. This assignment of error is without merit.

DECREE

For the forgoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED
LOMBARD, J., concurs in the result.
hi concur in the result. The items found in the kitchen of the main house, along with the nine rocks of cocaine and $200.00 found in the shed with the defendant are suspicious and, in conjunction with the controlled purchase, clearly constitute evidence of an intention to distribute under State v. Hearold, 603 So.2d 731, 735-736 (La.1992). Absent the evidence of the controlled purchase, however, I am not certain of the same result. Thus, if the evidence pertaining to the controlled purchase was erroneously admitted, I do not agree that it was harmless. A review of the record reveals, however, that the harmless error analysis is'unnecessary.
Evidence of “other crimes, wrongs, or acts” is generally “not admissible to prove the character of a person,” but may “be admissible for other purposes, such as proof of ... intent .... provided that upon request by the accused, the prosecution in a criminal case shall provide rea *1193 sonable notice in advance of trial for such purposes or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” La.Code Evid. art. 404(B); see also La.Code Crim. Proc. art. 720 (“Upon written motion by defendant, the court shall order the district attorney to inform the defendant of the state’s intent to offer evidence of the commission of any other crime admissible |2under the authority of Code of Evidence Articles 404 and 412.2.”). Thus, in order for the State to be required to give notice of its intent to submit evidence of “other crimes, wrongs, or acts,” the defendant must request such a notice.
Although the requisite request to the State for notice of intent to produce evidence of “other crimes, wrongs, or acts” would seemingly be a boilerplate defense motion automatically filed in every case, a review of the record in this case shows that defense counsel did not file such a request or motion. Rather, the defense included in its Motion for Discovery and Inspection, under No. 19 of the subheading “Evidence” the following question: “Does the state intend to offer at trial evidence of other crimes admissible under the authority of La. R.S. 14:445 or R.S. 15:446?”[1] Notably, La.Rev.Stat. 15:445 is nonexistent and La.Rev.Stat. 15:446 was repealed by Acts 1988, No. 515, § 8, effective on January 1, 1989. I do not find a query as to the State’s intent to offer evidence of other crimes based on the authority of a nonexistent or long-repealed statute constitutes the requisite request or motion, respectively, under La.Code Evid. art. 404(B) or La.Code Crim. Proc. art. 720 and, as such it appears that the State’s burden to provide prior notice of its intent to produce evidence of the controlled buy for the purpose of proving intent to distribute was effectively waived by defense counsel’s failure to file an appropriate (or current) request or motion. Therefore, under the totality of the circumstances of this case, the evidence is sufficient to support the defendant’s conviction for possession with intent to distribute.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. One of the documents was an invoice from Ochsner Medical Center dated March 13, 2009 addressed to Mr. Campbell at the Joliet Street address. The other two documents— an invoice from Van Meter & Associates postmarked September 9, 2009, and a notice of patient appointment on September 23, 2009 from Medical Center of Louisiana at New Orleans — were addressed to Mr. Campbell at 8502 Jeannette Street, New Orleans, Louisiana.

.A Google map documenting this fact was introduced into evidence at trial.

. According to Ms. Augustus, she recalled hearing a loud knocking on her house at 1438 Joliet Street on the morning of August 12, 2010. Before she could open the door, six police officers entered her house through the back door. The officers searched the house, though no one told her why. The officers refused to produce a search warrant and were very nasty to her. About thirty minutes later, an officer with a canine searched her house, but found nothing. A short while later, one of the officers informed Ms. Augustus that her son was under arrest, but did not say what for. When the officers left her home, they stole $2,700.00 from her.

. The same five factors also are enumerated by the Louisiana Supreme Court in a subsequent decision, State v. Hearold, 603 So.2d 731, 735 (La.1992) (citing House, supra). The factors are thus sometimes referred to as the Hearold factors. For ease of discussion, we refer to the factors as the House factors.

. The Stale notes that Detective Stovall wrote in his police report that he recovered "approx.h oz.” of cocaine. Likewise, in the gist sheet, which also was prepared by Detective Stovall, the quantity of cocaine recovered was estimated to be "approximately 14 oz.”

. See Rapp, 14-0633 at p. 4, 161 So.3d at 107 (noting that eleven rocks of cocaine is an amount indicating distribution).

. As noted elsewhere, there were two bags of cocaine. One bag contained nine individually wrapped pieces; the other bag apparently contained shavings or simply pieces of cocaine.

. At the time of the offense, both Detective Stovall and Sergeant O’Brien were employed with the NOPD Second District Narcotics Unit. Detective Stovall testified that he had about fourteen years of narcotics experience. Sergeant O’Brien testified that he had worked with the Second District Narcotics Unit for about three years.

. See State v. Ellis, 49,078, p. 2 (La.App. 2 Cir. 6/25/14), 144 So.3d 1152, 1156, writ granted, 14-1511 (La.4/17/15), 168 So.3d 389, (noting that the State's expert witness, who was qualified to testify on possession with intent to distribute, testified that “the [empty] box for digital scales found in the residence was for a type of scale commonly used to weigh illegal substances such as narcotics”).

. As noted elsewhere, the officers also recovered $200.00 in cash from the nightstand in the shed. Although $200.00 is not a large sum of cash, it is not a trifling sum, especially for an individual living in a shed. Nonetheless, as Mr. Campbell emphasizes, the State presented no evidence as to the denominations of the currency. We thus find that the cash recovered from the shed is not a significant factor to consider in determining the intent to distribute issue.

. La.C.Cr.P. art. 841(A), provides as follows:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

. Subsection (A) of No. 19 stated "If the answer to #19 is yes, please state the time, place and circumstances of the "other crimes evidence and the purpose for which it is offered.”