| | | |
|---|---|---|
| STATE OF LOUISIANA | * | NO. 2024-KA-0645 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| JACOB A. WALKER | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 559-771, SECTION "D"
Judge Kimya M. Holmes
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *
(Court composed of Judge Rachael D. Johnson, Judge Karen K. Herman, Judge Nakisha Ervin-Knott)

Jason R. Williams
District Attorney
Brad Scott
Chief of Appeals
Thomas Frederick
Assistant District Attorney
ORLEANS PARISH
619 South White Street
New Orleans, Louisiana 70119

      COUNSEL FOR STATE OF LOUISIANA

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, Louisiana 70073-2333

      COUNSEL FOR DEFENDANT/APPELLANT

                                  **AFFIRMED**
                                  **MAY 15, 2025**

The defendant, Jacob Walker ("Defendant"), seeks review of his conviction for sexual battery. For the reasons that follow, we affirm the Defendant's conviction.

## STATEMENT OF THE FACTS

On September 29, 2022, D.G.[1], a student at Tulane University ("Tulane") in New Orleans, Louisiana, had a scheduled massage therapy session with Defendant at his business, Crescent Kinetic Massage Therapy ("Crescent Kinetic"). During the massage session, Defendant allegedly touched D.G.'s vagina and breasts without her consent.

After the session, on the same day, D.G. disclosed this incident to two friends. Two days later, D.G. notified Tulane's Dean of Students of the incident, who then notified Tulane University Police Department ("TUPD") of the incident. TUPD contacted the New Orleans Police Department ("NOPD"). D.G. was interviewed by NOPD Detective Miosha Walker ("Detective Walker"). As a part of the

---

[1] Due to the nature of the crime discussed herein, we will refer to the victim by her initials to protect her identity. *See* La. R.S. 46:1844(W)(1)(a) (providing, in pertinent part, that "[i]n order to protect the identity and provide for the safety and welfare of … victims of sex offenses … all public officials and officers and public agencies, including but not limited to … judicial officers, … shall not publicly disclose the name, address, contact information, or identity of … victims of sex offenses….").

1

investigation, Detective Walker showed her a photo lineup, and D.G. identified Defendant as the individual who performed the massage and touched her inappropriately. Based on D.G.'s identification, Defendant was arrested.

## PROCEDURAL HISTORY

On October 24, 2023, the State filed a bill of information charging Defendant with sexual battery, a violation of La. R.S. 14:43.1. On November 14, 2023, Defendant pled not guilty to the charge.

A one-day jury trial proceeded on June 18, 2024, with the jury finding Defendant guilty of sexual battery. Prior to sentencing, on August 15, 2024, Defendant filed a motion for new trial and motion for post-verdict judgment of acquittal, which were both denied. On the same day, the trial court sentenced Defendant to five years imprisonment at the Department of Corrections without the benefits of probation, parole, or suspension of sentence. This appeal timely followed.

## ERRORS PATENT

In accordance with La. C.Cr.P. art. 920(2), all appeals are reviewed for errors patent on the face of the record. A review of the record reveals one error patent.

The record evidences that the trial court sentenced Defendant less than twenty-four hours after denying his motions for new trial and post-verdict judgment of acquittal. Thus, the trial court erred in failing to observe the twenty-four hour sentencing delay required by La. C.Cr.P. art. 873. Louisiana Code of Criminal Procedure Article 873 states that if "a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled," unless the defendant "expressly waives" the delay or pleads guilty. Nevertheless, if a defendant waives the twenty-four hour sentencing delay, then the trial court's failure to wait at least twenty-four hours after a motion for new

2

trial constitutes harmless error. *State v. Robinson*, 2021-0254, p. 21 (La. App. 4 Cir. 2/18/22), 336 So.3d 567, 580.

Defendant was convicted by jury on July 18, 2024. On August 15, 2024, Defendant filed motions for new trial and post-verdict judgment of acquittal, which were denied on the same day. Following the denial of these two motions, the trial court proceeded to sentence Defendant. There is no indication in the record that Defendant waived the twenty-four hour sentencing delay. When the trial court sentenced Defendant on the same day as the denial of the motions for new trial and post-verdict judgment of acquittal, the trial court failed to comply with the twenty-four hour sentencing delay found in La. C.Cr.P. art. 873. However, when a defendant does not challenge his sentence on appeal and does not raise as an error the failure of the trial court to observe the twenty-four hour sentencing delay, the error is considered harmless. *State v. Jenkins,* 2019-1024, p. 8 (La. App. 4 Cir. 9/30/20), 365 So.3d 55, 62. In this matter, Defendant did not challenge his sentence on appeal, and he failed to raise as an error the issue of the twenty-four hour sentencing delay. Accordingly, although the trial court erred in failing to observe the twenty-four hour delay required by La. C.Cr.P. art. 873, we conclude the error was harmless.

### DISCUSSION

As his sole assignment of error, Defendant contends there is insufficient evidence to support his sexual battery conviction. Recently, in another sexual battery case, this Court stated:

> "The standard for determining an insufficiency of evidence claim is well settled." *State v. Campbell*, 2015-0017, p. 7 (La. App. 4 Cir. 6/24/15), 171 So. 3d 1176, 1182. Claims for insufficiency of evidence must be viewed in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Wilson*, 2022-0346, p. 4 (La. App. 4 Cir. 12/9/22), 353 So.3d 389, 393. An appellate court is tasked with determining if the

3

evidence is sufficient to convince a rational trier of fact that all elements of a crime have been proven beyond a reasonable doubt. *Id.*

"This Court must review 'the record as a whole since that is what a rational trier of fact would do.'" *Wilson*, 2022-0346, p. 4, 353 So.3d at 393 (citation omitted). This Court is not tasked with assessing the credibility of witnesses or reweighing evidence. *Campbell*, 2015-0017, p. 8, 171 So.3d at 1182 (citations omitted). The credibility determination of the trier of fact will not be disturbed unless clearly contrary to the evidence. *Id.* The testimony of a single witness, if believed by the trier of fact, is sufficient to support a factual conclusion. *Id.*

*State v. Magee,* 2022-0635, pp. 6-7 (La. App. 4 Cir. 3/20/23), 382 So.3d 155, 162, *writ denied,* 2023-01583 (La. 5/29/24), 385 So.3d 701.

The State charged Defendant with the sexual battery of D.G., a violation of La. R.S. 14:43.1, and the jury found him guilty as charged. Louisiana Revised Statute 14:43.1(A) defines sexual battery, in pertinent part, as:

[T]he intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:

(1) The offender acts without the consent of the victim.

According to La. R.S. 14:43.1(A)(1), in order to uphold a conviction for sexual battery, the State was required to present sufficient evidence that the Defendant touched D.G.'s genitals without her consent. Defendant argues that there is insufficient evidence for his conviction of sexual battery because the State failed to present any physical or other evidence to corroborate D.G.'s testimony. At trial, the State presented no physical, medical, DNA, eyewitness, or other corroborating evidence of a sexual battery. The State's sole evidence presented to substantiate the sexual battery conviction was D.G.'s testimony.

4

Notably, our Court has recognized that "[i]n cases involving sexual offenses, the testimony of the victim alone may be sufficient to establish the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense." *Magee,* 2022-0635, p. 9, 382 So.3d at 163 (citing *State v. Barbain*, 2015-0404, p. 10 (La. App. 4 Cir. 11/4/15), 179 So.3d 770, 778). At trial, D.G. testified concerning the events that preceded the incident, the incident itself, and her actions after the incident. During her testimony, D.G. explained that several years before the subject incident, she was involved in a motor vehicle accident, which resulted in her suffering with chronic neck and back pain. When she experienced "flare-ups" of these injuries, D.G. would receive massage therapy. D.G. testified that in May 2022, she was experiencing neck and back pain and searched for a massage therapist located near Tulane's campus. She found Crescent Kinetic – Defendant's business – and further research revealed Defendant had experience working with chronic pain. D.G. scheduled her first session with Crescent Kinetic, however, it was with another massage therapist because Defendant was unavailable. D.G. did not allege any sexual battery occurred during this first session.

D.G. testified that in September 2022, she experienced another flare-up of neck and back pain and scheduled another session at Crescent Kinetic, although this time, she was able to schedule Defendant as her massage therapist. Again, D.G. did not allege any sexual battery occurred during this session with Defendant. After this initial session with Defendant, D.G. testified that she scheduled a subsequent massage session with Defendant for September 29, 2022.

Regarding the September 29, 2022 incident, D.G. testified that the session initially started out as a typical massage. However, towards the end of the massage,

5

as she was lying on her back, she felt Defendant moving closer to her vagina. Then, she noticed that Defendant's hands were on top of her vagina, and thereafter, he began touching the inside of her vagina. D.G. further testified that while the Defendant was touching the inside of her vagina, he asked, "Are you okay with penetration?" D.G. responded in the affirmative, "Uh-huh." D.G. expounded:

> So throughout the massage, because this is painful process even though it helps the soft tissue, or it helped with my chronic pain, in order for it to help it has to be kind of uncomfortable for me. The way in which I responded when I've gotten massages or soft tissue work done in the past, I say, you know, they ask, you know, "Is this too much pressure?" All of that stuff, so. My response to that is, like, "uh-huh (Affirmative response)."

> So prior to all this happening, when he was asking questions, like, "is this okay?" About just the amount of pressure; "is this pressure okay?" I would say, "uh-huh (Affirmative response)." That's what came out of my mouth when he asked ["Are you okay with penetration?"], I just said, "Uh-huh (Affirmative response)."

Defendant also asked, "Is this too many fingers?" Again, D.G. responded in the affirmative, "Uh-huh." D.G. explained that while she was still covered by a sheet when Defendant began touching her vagina, he later removed the sheet so that her body was completely exposed. D.G. further testified that in addition to touching her vagina, Defendant also fondled her breasts. When the Defendant completed the massage, D.G. stated that he asked, "Did you come?" and placed the sheet back over her body. D.G. hurriedly put on her clothes, and as she was paying for the session, Defendant asked, "Are you okay with everything that just happened?" D.G. testified that she responded, "Thank you, thank you" and quickly left the premises. On cross-examination, D.G. acknowledged that she left a tip for the Defendant.

After the incident, D.G. Facetimed with her parents. D.G. explained that her phone was not working, so after her massage, she used her laptop to Facetime with her parents. During their conversation, her parents asked, "How was the massage?"

6

D.G. responded, "Oh, it was good." D.G. spent the remainder of the day with one of her friends – driving around to AT&T and Apple stores trying to get her phone fixed. D.G. testified that she first disclosed the incident to her roommate – and subsequently to another friend – later on that same day. Two days later, she informed Tulane's Dean of Students, who notified TUPD, and TUPD contacted the NOPD.

To controvert D.G.'s testimony, Defendant testified that he did not touch D.G.'s vagina and gave a demonstration of how he performs massages. Defendant also testified that on the day of the incident, he did not deviate from his normal massage process. In addition to his testimony, Defendant called two other people testify in his defense: Amber Jordan ("Ms. Jordan") and Tia Alexander Walker ("Mrs. Walker"). Ms. Jordan – whose office is located next to Defendant's office – testified that the walls between the two offices are very thin, and on the day of the incident, she did not hear any signs of a sexual battery taking place in Defendant's office. Mrs. Walker – Defendant's wife – testified that she is Defendant's business partner and does the laundry for the business "every single day." On the day of the incident, she did not notice any fluids or anything out of the ordinary in washing the sheets after D.G.'s massage.

Defendant adopts a two-part challenge to his sexual battery conviction: (1) He did not touch D.G.'s vagina; and (2) even if one believes that this touching occurred, D.G. consented to the vaginal touching as part of her massage. Regarding the first part of his challenge, Defendant asserts that if D.G. had been the victim of a sexual battery, she would have reported the incident to her parents during their Facetime conversation immediately after the massage and would not have told them that her massage was good. Additionally, Defendant maintains that if D.G. had been the

7

victim of a sexual battery, she would not have said, "Thank you, thank you" at the conclusion of the massage nor would she have left a tip for the Defendant.

The fact that D.G. did not immediately notify her parents of the incident does not challenge the credibility of her testimony, especially considering the fact that she told her two friends what occurred the same day of the incident. Also, D.G. reported the incident to the Dean of Students two days after the incident. Moreover, D.G. testified that she was trying to leave Defendant's premises "as soon as [she] could," which a rational juror could have determined accounted for her response of "Thank you, thank you" and leaving a tip.

As to the second part of his challenge, Defendant contends that D.G. expressed consent to the vaginal touching when she responded "Uh-huh" to his request to penetration. Yet, D.G. testified that her response of "Uh-huh" was a routine response she gave throughout the massage to other questions, and that in the moment, she froze. Additionally, as noted in D.G.'s testimony, Defendant had already placed his fingers inside of her vagina before asking if she consented to penetration, and there was no testimony provided that established D.G.'s prior consent to the touching of her vagina.

After a review of the evidence before this Court, we find that the jury made reasonable credibility determinations in favor of the State. In this case, the necessary elements of sexual battery were established through D.G.'s testimony as she testified that Defendant placed his hands on top of and fingers inside of her vagina without her consent. The record reveals sufficient evidence to conclude that any rational trier of fact could have found that the State proved beyond a reasonable doubt all the elements of sexual battery. Accordingly, we conclude that this assignment of error, regarding the sexual battery conviction, is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the Defendant's conviction for sexual battery.

**AFFIRMED**